DONALD JAMES SCHNEPP, Petitioner, v. JACK FOG--LIANI, Warden, Nevada State Prison, Respondent.

No. 5175

March 16, 1967                                    425 P.2d 141

*Gary A. Sheerin,* of Carson City, for Petitioner.

*Harvey Dickerson,* Attorney General, *C. B. Tapscott,* Chief Assistant Attorney General, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Donald Schnepp and a codefendant were convicted of burglary. The conviction was affirmed on appeal. (Schnepp v.

State, 82 Nev. 257, 415 P.2d 619 (1966).) He now seeks habeas corpus for post conviction relief on the ground that he was deprived of a fair trial before 12 impartial jurors because of an incident that occurred during the trial. The remedy is appropriate. Messmore v. Fogliani, 82 Nev. 153, 413 P.2d 306 (1966).

During a late morning recess of the second day of the trial the petitioner, his codefendant, two deputies from the sheriff's office and a member of the jury were riding in the elevator in the courthouse. One deputy sheriff made the statement, "This little one (pointing at the petitioner) went in the place [burglarized], the big one (pointing at the co-defendant) is too big to go in the place, he drove the get away car." There were also jocular remarks referring to Schnepp's ability to coerce the codefendant to accompany Schnepp since Schnepp is slight and the codefendant weighed about 300 pounds.

The incident was called to the attention of the trial judge who, informally and in chambers, determined that the matter was not serious. He ordered the trial to proceed but did admonish the jury in the statutory manner to decide the case only as the case is submitted to them.

1. The point now in issue was not raised when the conviction was first appealed to this court. Since then, Parker v. Gladden, 385 U.S. 363, 17 L.Ed.2d 420 (1966), was decided by the U.S. Supreme Court. Extrajudicial remarks in the presence of jurors have assumed different proportions. There, it was held that the remark of the bailiff, "Oh, that wicked fellow, he is guilty," to certain jurors, despite its lack of Tarzan-like quality, deprived the defendant of his right to be adjudged by 12 impartial and unprejudicial jurors and was inherently prejudicial. Cf. Turner v. Louisiana, 379 U.S. 466, 472–473 (1965); Patterson v. Colorado, 205 U.S. 454, 562; Sheppard v. Maxwell, 384 U.S. 333 (1966); Pointer v. Texas, 380 U.S. 400 (1965).

In this case, the two officers were in charge of the defendants who were prisoners of the state. Their duties were to safeguard the prisoners and insure their attendance in court during the trial. The comments made in the elevator were meant in jest but they were not funny to the defendant whose liberty was at stake. State v. Cotter, 54 N.W.2d 43 (Wis. 1952). The presence of the juror precluded any right on the part of the officers to be "good fellows" for the badge and uniform clothed them with the dignity of the state, the impact of which cannot be measured. The remarks bore directly on the guilt or innocence

of the defendant. Parker v. Gladden, supra, declares that these circumstances create prejudice inherently harmful, incapable of rebuttal. When so deep-rooted, as here, an admonition to the jury provides no help. Cf. State v. Pacheco, 82 Nev. 172, 414 P.2d 100 (1966); Parker v. Gladden, supra.

It is ordered that the writ of habeas corpus must issue and Schnepp be discharged unless the state gives him a new trial within a reasonable time. (Pate v. Robinson, 383 U.S. 375, 386 (1966).) We commend the efforts of court-appointed counsel and direct the sum of $350.00 be paid him upon the filing of the appropriate certificate.

THOMPSON, C. J., concurs.

COLLINS, J., concurring:

I concur in the result announced in the majority opinion but for different reasons. The majority reads Parker v. Gladden, 385 U.S. 363, 17 L.Ed.2d 420, to mean that the improper remark of the bailiff in the presence of jurors to be "inherently prejudicial." The United States Supreme Court comes close to saying that, but to my mind stops short of a flat holding of inherent prejudice. They say in 17 L.Ed.2d at 423, "Aside from this, we believe that the unauthorized conduct of the bailiff 'involves such a probability that prejudice will result that it is deemed lacking in due process,' Estes v. Texas, 381 US 532, 542–543, 14 L ed 2d 543, 549, 550, 85 S Ct 1628 (1965)." The court seems to base its decision on the fact that one juror testified that she *was* prejudiced by the statements and that the petitioner was entitled to be tried by twelve, not nine or even ten, impartial and unprejudiced jurors.[1] Thus it appears to me their decision is bottomed upon a finding of actual prejudice, not presumed prejudice, albeit to only two of the twelve jurors.

If the decision rests upon actual prejudice, some proceeding must be followed to enable the trial court to determine actual prejudice. This proceeding should consist of further or additional voir dire examination of all the jurors with counsel for both defendant and state participating. This was not done in the instant case. Instead, the trial judge held an in-chambers hearing with counsel, determined the incident was not prejudicial, gave the jury a cautionary instruction and proceeded with the trial. For that handling of the matter, where there was no factual finding of lack of prejudice by examination of the jurors themselves, the writ must be granted.

The United States Supreme Court sanctions this approach in

---

[1]Oregon law permitted conviction by ten jurors, not twelve, and ten testified they had not heard the remark of the bailiff.

Remmer v. United States, 347 U.S. 227, at pp. 229–230, when it said: "The trial court should not decide and take final action ex parte on information such as was received in this case,[2] but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." This procedure was approved by this court in Conforte v. State, 77 Nev. 269, 362 P.2d 274 (1961), where at page 273 it was held: "The lower court determined from such evidence that any presumption of prejudice was rebutted and that the communication to the juror did not prejudice any member of the jury. This determination is supported by substantial evidence and will not be disturbed."

I have great faith that jurors when properly and adequately informed of their constitutional and statutory duty to decide the issue of guilt or innocence solely upon evidence presented in open court can and will follow that instruction. If, inadvertently through no fault of his own a juror receives extra-judicial information on the merits of the trial, but states solemnly under oath, after examination by both parties, he can and will set it out of his mind and not consider it in reaching a verdict, he must be believed and the trial continued or the verdict upheld. Otherwise, I say, our whole jury system is at stake. Jurors do not live in a vacuum, and everyone who has ever participated in a jury trial knows jurors come into the trial with some if not a great deal of previously acquired information about the issues of the case they are to try. If they can be trusted to be seated at the commencement of the trial on their statement under oath they will consider only that evidence allowed to come before them in reaching their verdict, why can't they be trusted during trial in the same manner? I say they can. But they must be examined on the question of actual prejudice, for only the juror can state the condition of his mind on that subject. No such examination was conducted by the trial court, and it was unable to factually determine the prejudice or absence of it from the bailiff's unwarranted remarks about the defendant, whether jocular or not.

I fear a holding of "inherent prejudice" under circumstances present in this case, will set off a rash of attacks on jury convictions. Unless jurors are totally sequestered throughout every criminal jury trial, I see no way to prevent inadvertent happenings of the sort described here. The entire strength of the jury system depends upon trustworthy and conscientious jurors who

---

[2]An unnamed person communicated with a trial juror indicating the juror could personally profit for a verdict favorable to petitioner.

will obey their oath and follow the court's instructions on performance of their duty. If we cannot accord jurors that confidence and trust, then the whole system is in jeopardy.

The dissenting opinion of Mr. Justice Harlan in Parker v. Gladden, supra, while not the law of the case, articulates the dangers of a holding of "inherent prejudice" without a factual finding far better than I can state them. He says at page 424 and 425 of the opinion: "Thus, though I believe unintentionally, the Court's opinion leaves open the possibility of automatically requiring a mistrial on constitutional grounds whenever any juror is exposed to any potentially prejudicial expression of opinion. * * * Here no procedure adopted by the State is to be faulted and it seems clear to me that the rule of Stroble v California, 343 US 181, 96 L ed 872, 72 S Ct 599, and Irvin v Dowd, supra, should apply and a substantial showing of prejudice in fact must be made before a due process violation can be found. * * * '[I]t is an impossible standard to require that tribunal [the jury] to be a laboratory, completely sterilized and freed from any external factors.' Rideau v. Louisiana, 373 US 723, 733, 10 L ed 2d 663, 669, 83 S Ct 1417 (Clark, J., dissenting)."