Argued October 9, affirmed October 25, petition for rehearing
denied November 28, 1967

## STATE OF OREGON, *Respondent, v.* JAMES BUTTLER ELKINS, *Appellant.*

432 P. 2d 794

*George A. Haslett, Jr.,* Portland, argued the cause
and filed the brief for appellant.

*Jacob B. Tanzer,* Deputy District Attorney, Port-
land, argued the cause for respondent. With him on

the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and WOODRICH, Justices.

WOODRICH, J. (Pro Tempore).

This is an appeal from a judgment of conviction on a charge of driving while under the influence of intoxicating liquor. Defendant was first convicted in district court. On appeal to the circuit court he was again convicted. Defendant contends he was denied a fair trial by reason of adverse publicity occurring during trial.

On the morning of June 21, 1966, the second day of trial, after the jury had been impaneled, defendant moved for a mistrial on the ground that an article appeared in the morning edition of the June 21, 1966, *Oregonian,* reciting defendant's earlier conviction and sentence in district court on the same charge. The article made references to some of the facts alleged in the first trial, summarized the proceedings of the first day of the second trial, and characterized the defendant as "a prominent figure in the Portland vice trials in the late 1950's." After some colloquy between the court and defense counsel, the following transpired:

> "THE COURT: Good morning, Ladies and Gentlemen. Since we recessed yesterday afternoon, there has been some publication of this trial, I understand, although the Court has not learned of it personally, on the radio and perhaps on television, and there's been some story as I understand in both papers, one of which I'm personally familiar with.

"Now, the Court at this time wants to ask each member of the jury if they have heard or seen or read or by any other means of communication, learned anything about the stories that I have referred to, and if it's going to affect your—first of all, have you heard or read anything about the case?

"I understand the presiding judge informed you at the start of the jury term that you're not to discuss or read anything about the cases.

"Have any one of you so done?

"JUROR NO. 9: I heard downstairs this morning that someone said that there was an article in the *Oregonian*.

"THE COURT: Did you read it?

"JUROR NO. 9: No.

"THE COURT: You don't know the contents?

"JUROR NO. 9: No, and I didn't hear anything. I did hear that there was something.

"JUROR NO. 8: I had the same experience.

"THE COURT: Did you read the article, or do know what it's about?

"JUROR NO. 8: No.

"JUROR NO. 1: I saw an article last night in last night's *Journal*.

"THE COURT: That was just that the trial had started?

"JUROR NO. 1: That's all I saw.

"THE COURT: Of course, it was mentioned to you I think all yesterday that the defendant here had been in the news, either by television or radio or newspapers, is that not right? And you were all asked if that would affect your judgment in this case, and you three that answered the Court's question, the mere fact there was some publication about the facts reported, is that going to affect your judgment?

"JUROR NO. 8: No.

"JUROR NO. 9: No.

"JUROR NO. 1: No.

"THE COURT: You feel you can be fair and impartial and comply with the oath you took yesterday to decide this case only on the evidence you hear in the courtroom and the instructions from the Court at the conclusion of the trial.

"JUROR NO. 8: I also saw that.

"THE COURT: As I recall, the *Journal* was called to my attention and it just said that the trial was starting. Have you read anything further?

"JUROR NO. 7: No, I have not.

"THE COURT: Anything further, Mr. Haslett?

"MR. HASLETT: I would like to ask all of them whether or not they read the articles in this morning's *Oregonian*?

"THE COURT: Ask each one individually? Go ahead.

"MR. HASLETT: I didn't know if all of them had answered no.

"THE COURT: Have you read any articles in the *Oregonian* this morning or listened to any radio or television or any other method?

(Whereupon there was a negative response by the jurors.)

"THE COURT: Mr. Haslett, your motion is denied, and we'll proceed with the trial. And again, the Court will admonish the members of the jury not to read about this case or listen to anything about it or by any means of communication, television, radio, newspapers, word of mouth, whatever it may be, until you retire and arrive at a verdict in this case."

During the afternoon session defendant again moved for a mistrial based on an article, substantially

the same as that above, which appeared in the *Oregon Journal*. The court ruled:

> "THE COURT: Mr. Haslett, I'm aware of it, but for the same reasons I indicated this morning, this most recent publication being brought to the Court's attention at this time, and it was published sometime this morning after the Court · again warned the jury not to read or speak or listen to any communication or—either by the press, radio or television about the trial. And certainly for that reason alone and other reasons this morning, I'm denying the motion."

The morning of the third day of trial, defendant again moved for a mistrial based on an article appearing in *The Oregonian* that morning. The article was similar to the previous two, except its contents were limited to the alleged facts of the charge in this case and the proceedings in the district and circuit court. The trial judge denied this motion for the same reasons given in his previous rulings.

■■ The only assignment of error asserted by defendant is the trial court's denial of his several ·motions for mistrial based on publicity during trial. "* * * [A] motion for a mistrial is addressed to the discretion of the trial court * * * only when it can be said that the trial court abused its discretion will this court reverse * * *." *State v. Hoffman*, 236 Or 98, 108, 385 P2d 741 (1963). There is no claim or showing that any juror was false in his answers to the court's inquiry at the time of defendant's first motion for a mistrial. The trial court and this court must presume that the answers of each juror were honest. *State v. McDonald*, 231 Or 24, 37, 361 P2d 1001 (1962). Based on these answers the trial court very properly denied defendant's first motion for mistrial.

The quoted instruction following the court's inquiry of the jury carefully admonished the jury to refrain from obtaining any outside information about the case from any source whatsoever. The jury is under oath to follow the law given them at the trial. It is presumed that the jury followed the court's instruction and honored their oath. ORS 41.360(15)(33); *Sedillo v. City of Portland,* 234 Or 28, 33, 380 P2d 115 (1963); *State v. Reed,* 52 Or 377, 97 P 627 (1908). The trial court had a right to rely on this presumption and it was certainly no abuse of discretion so to do.

The defendant urges that the rule of *Sheppard v. Maxwell,* 384 US 333, 86 S Ct 1507, 16 L Ed2d 600 (1966), is controlling in the instant case. Contrary to the facts in *Sheppard,* the trial judge very carefully protected the rights of the defendant from adverse publicity.

Affirmed.