JOHNNY WAYNE CROWE, Appellant, v. STATE OF NEVADA, Respondent.

No. 5440

May 17, 1968                    441 P.2d 90

*Alfred Becker*, of Las Vegas, for Appellant.

*Harvey Dickerson*, Attorney General, and *George E. Franklin, Jr.*, District Attorney, Clark County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Johnny Wayne Crowe seeks reversal of his conviction for the sale of narcotics on three grounds: (1) that the opinion testimony of a probation and parole officer as an expert on narcotics addiction should not have been admitted; (2) that

the trial court should have permitted a voir dire examination of the jury after the publication of a newspaper article relating to Crowe's former narcotics trials; and (3) that the trial court should not have allowed the conviction to stand because the only material evidence was the testimony of a police informer, himself a narcotics user. We agree that reversal is required.

James Alexander became a police informer and a user of narcotics "in the public interest," in order to serve the community, as he stated, to do something about the narcotics problem. From marijuana he stepped up to heroin and LSD during the years he acted as an informer. He became a steady user of heroin although professing that he was not an addict, maybe "emotionally but not physically."

The police set Alexander up to make a "score" (a purchase) of heroin from Crowe, a suspected "pusher" (seller) in the Las Vegas area. They gave Alexander $42 in cash making careful note of the serial numbers on the bills and that Alexander had no other money on him. Alexander made the preliminary steps to meet with Crowe, advised the police, and did in fact meet with him, but the police never did see the two of them together. The only material and relevant testimony of the transaction was the word of Alexander the informer against Crowe the defendant. Alexander testified that he and Crowe and two other companions took "shots" in a restroom of a service station, using heroin purchased from Crowe, saving some which he turned over to the police. He said that instead of taking a "shot" he put the needle entirely through his skin so that the dope came out from the needle onto his arm instead of into his vein, a stunt according to him he had learned from the Federal Bureau of Investigation.

Crowe in defense admitted that he, Alexander and two companions each took the "shots," but testified the heroin used had been supplied by Alexander who had purchased it from someone other than Crowe. No money, particularly the marked bills, was found on Crowe when he was arrested three weeks after the incident. The companions did not testify nor was there any explanation of their absence. The only witnesses at the trial for the state were a chemist, Alexander, one of the two police officers who set up Alexander for the purchase, and James Gerow, a parole and probation officer, who was used to testify that Alexander was not an addict.

1. We reject the contention of the appellant that the subject of narcotics addiction be deemed a medical matter singularly within the province of testimony of expert medical witnesses. We believe the use of nonmedical testimony is

neither erroneous nor prejudicial. People v. Mack, 338 P.2d 25 (Cal.App. 1959); People v. Smith, 61 Cal.Rptr. 557 (Cal.App. 1967).

However here the trial court did not rule whether Gerow qualified as an expert, but left it to the jury to determine whether his testimony was to be considered as that of an expert or layman and the weight to be accorded such testimony. This was error. It is the function of the trial judge to first determine, when the question is presented, whether or not a witness is qualified to testify as an expert, Hardison v. State, 84 Nev. 125, 437 P.2d 868 (1968), but in this instance is much ado about nothing. Lay witnesses, such as Gerow, who are sufficiently trained and experienced, may testify at the discretion of the trial court relative to the use and influence of narcotics or the addiction thereto. See People v. Chrisman, 64 Cal.Rptr. 733 (Cal.App. 1967); People v. Mack, supra; People v. Smith, supra; State v. Chavez, 421 P.2d 796 (N.M. 1966). Furthermore, under cross-examination he admitted that he had observed Alexander (who was on probation) only a few minutes each month and that he partly relied on statements of other staff members for his conclusion that Alexander was not an addict. When Alexander testified he freely related his long use of narcotics from which the jurors could assess their own values. Thus, while it was error for the court not to rule whether or not Gerow qualified as an expert, the failure was not so material to warrant a reversal since he could properly testify as a lay witness in the trial court's discretion and no prejudice resulted. State v. Jiles, 142 N.W.2d 451 (Iowa 1966).

2. We cannot say the same however for the second assignment of error. The refusal of the trial court to exercise appropriate procedural safeguards that have many times been ruled essential to a fair trial necessitates a new trial for Crowe.

The jury was selected in the afternoon and permitted to separate until the trial commenced the following morning. The afternoon newspaper of that day and the morning edition the following day carried a three-column news story which stated in the headline, "IN NARCOTICS TRIAL DISTRICT ATTORNEY SUFFERS BIG DEFEAT." In the first three paragraphs Crowe was mentioned by name as the defendant in narcotics proceedings which ended in three mistrials and then an acquittal. The district attorney, the article read, was "reeling from a stinging not guilty verdict rendered against

him," and a deputy district attorney was quoted, "You might as well forget about presenting sale of narcotics charges."

Immediately when this present trial convened Crowe's counsel moved the court to interrogate the jurors concerning the news article. Despite the suggestive atmosphere generated by the news article the trial court refused to conduct a voir dire examination of the jury to determine if they had read the article and, if so, what effect, if any, it had upon them. We said in Pacheco v. State, 82 Nev. 172, 414 P.2d 100 (1966), if the issue of guilt or innocence is close and the jurors have been exposed to a publication about the defendant, a new trial may be inevitable, so we advised that the trial judge augment his statutory admonition to the jurors with a caution that they not read news articles or listen to news accounts of the trial. That "suggestion" was made statutory by the 1967 legislature.[1]

The state and the defendant both agree that the article was prejudicial, the state because it was critical of the prosecutor, and the defendant because the deputy district attorney's statement placed, in his view, a feeling upon the jury that it must bring in a guilty verdict as a command performance. Without a voir dire examination neither had the opportunity to find out.

However we are not here concerned with the nature or the character of the article, since the only question we deem important is whether the trial court employed adequate procedural safeguards to protect the defendant's right to a fair and impartial jury trial against the possible prejudicial effect of news accounts. The trial judge has large discretion in ruling on the issue of possible prejudice resulting from news articles concerning a defendant on trial and each case must turn on its special facts. Marshall v. United States, 360 U.S. 310 (1959). However a news account, possibly prejudicial, may indeed have a greater effect on a jury when it is "not tempered by protective procedures. Id. at 313. Therefore, procedural safeguards are to be employed by the trial judge to control the

---

[1]NRS 175.401(2). *"Jury to be admonished at each adjournment.* The jury must also, at each adjournment of the court, whether they be permitted to separate or be kept in charge of officers, be admonished by the court that it is their duty not to:

\* \* \* \* \*

"2. Read, watch or listen to any report of or commentary on the trial or any person connected with the trial by any medium of information, including without limitation newspapers, television and radio \* \* \*."

conditions within his province, the courtroom, rather than to control freedom of the press. Estes v. Texas, 381 U.S. 532 (1965); Sheppard v. Maxwell, 384 U.S. 333 (1966). It is the trial court's function to endeavor to prevent even the probability of unfairness in keeping with due process requirements. In re Murchison, 349 U.S. 133 (1955); Tumey v. Ohio, 273 U.S. 510 (1927).

And while it is true that most claims of due process deprivations require a showing of identifiable prejudice to the accused, nevertheless at times, a probability that prejudice will result is deemed inherently lacking in due process. Estes v. Texas, supra; Rideau v. Louisiana, 373 U.S. 723 (1963); Turner v. Louisiana, 379 U.S. 466 (1965).

In the instant case, no adequate procedural protections were taken to insure a fair trial. The court did not permit inquiry of the jury, gave no admonitions that they were to avoid news accounts, and did not instruct them prior to deliberation that news stories should be disregarded. These are procedures normally utilized by trial courts to reduce the appearance of possible prejudicial material and to protect the jury from outside influence. Failure to take these precautions total reversible error.

In certain circumstances when it is brought to the trial court's attention that news accounts concerning the defendant have appeared during the course of the trial there is an "imperious necessity" to ascertain the fact of exposure and whether prejudice was created in the minds of the jury. Adjmi v. United States, 346 F.2d 654 (5th Cir. 1965); Coppedge v. United States, 272 F.2d 504 (D.C. Cir. 1959); Mares v. United States, 383 F.2d 805 (10th Cir. 1967); People v. Cain, 224 N.E.2d 786 (Ill. 1967); Trombley v. Langlois, 163 A.2d 25 (R.I. 1960). This rule has been applied to instances where other extrajudicial matters are concerned. Remmer v. United States, 347 U.S. 227 (1954); Conforte v. State, 77 Nev. 269, 362 P.2d 274 (1961); Schnepp v. Fogliani, 83 Nev. 131, 425 P.2d 141 (1967); Tomlin v. State, 81 Nev. 620, 407 P.2d 1020 (1965); Cf. Parker v. Gladden, 385 U.S. 363 (1966). Even if not requested by a party the court may have the responsibility of conducting an examination on its own initiative. Mares v. United States, supra. Those cases holding that it is the duty of the trial court to question the jury arise in context wherein the extrajudicial communications themselves contain clear or presumed inherent prejudice. In most other instances the courts recognize that permission to interrogate members of the jury

lies within the sound discretion of the trial court. Marshall v. United States, supra; State v. Chambers, 428 P.2d 91 (Ariz. 1967); People v. Lambright, 393 P.2d 409 (Cal. 1964); State v. Collins, 150 N.W.2d 850 (Minn. 1967); Trombley v. Langlois, supra.

It is difficult for a trial court to gauge prejudice, and the issue is not whether the trial judge himself views an article as prejudicial as it is to determine whether the article tends to have a prejudicial effect in the jury's minds. Accordingly, such determinations should not always be made in chambers with counsel, rather, in instances of doubt the jury should be examined. Schnepp v. Fogliani, supra (concurring opinion).[2]

However, we are not called upon nor is it necessary to determine whether in the case at bar it was a mandatory or discretionary matter for the trial court to allow voir dire of the jury concerning the news account. That question we reserve for a later case. For coupled with the trial judge's refusal to permit examination of the jurors, he failed to properly admonish and adequately instruct the jury. In order to protect so far as possible the essential rights of the defendant it is required that trial courts call the attention of the jurors specifically to the possibility of news accounts and to admonish the jurors not to read or listen to them. Likewise there is abundant authority recognizing that formal cautionary instructions are equally essential to provide the jury with specific guidelines to assure the requisite balance of impartiality. Pacheco v. State, supra (both opinions); Sollars v. State, 73 Nev. 248, 316 P.2d 917 (1957); Coppedge v. United States, supra; Mares v. United States, supra; People v. Lambright, supra; People v. Cain, supra; State v. Elkins, supra; State v. Collins, supra; Trombley v. Langlois, supra; State v. Rinkes, 425 P.2d 658 (Wash. 1967).

When a news account such as here is specifically called to the attention of the trial court and voir dire is not made, we

---

[2]Once interrogation of the jurors is undertaken it is the duty of the trial court then to see that a meaningful examination is conducted in light of the "entire picture" of the incident to which the complaint is addressed. Conforte v. State, supra; Schnepp v. Fogliani, supra (both opinions); Remmer v. United States, 350 U.S. 377 (1956); Coppedge v. United States, supra; Mares v. United States, supra; People v. Lambright, supra; People v. Cain, supra; State v. Elkins, 432 P.2d 794 (Ore. 1967).

think it is incumbent upon the trial court to see that such admonitions and instructions are given. The simple fact is that enough must be done to assure a fair trial. Harney v. United States, 306 F.2d 523 (1st Cir. 1962). In the totality of the circumstances here we cannot say this was done.

3. We turn now to consider the use of a police informer's testimony as the basis of a conviction for the sale of narcotics. The appellant contends that the uncorroborated testimony of an informer, who admittedly is a user of narcotics if not an addict, is insufficient to prove guilt beyond a reasonable doubt as a matter of law. See NRS 177.025. As authority he urges a collection of cases from the Illinois jurisdiction, which we note are principally intermediate appellate court decisions.

It is a common practice of law enforcement officials to enlist the aid of paid informers to conduct "controlled purchases" of narcotics in order to obtain evidence for convictions in the attempt to curb narcotics traffic. To do this it has been found necessary to get down to the level of those who do the trafficking. As stated by the respondent, "pushers" do not sell to "choirboys."

On appeal from a conviction, as here, the attack is most often addressed to the fact that the informer is a person of low moral character. However, we can find no good reason of public policy why the prosecution should be deprived of the benefit of an informer's information or to arbitrarily penalize the prosecution for the low morals of informers for the real issue is not a question of law for the court, but one of credibility for the jury. On Lee v. United States, 343 U.S. 747 (1952); Todd v. United States, 345 F.2d 299 (10th Cir. 1965); People v. Harris, 284 N.Y.S.2d 638 (N.Y.App. 1967). A rule prohibiting the use of informers or belief of their testimony would severely hamper the state in ferreting out those who traffic in narcotics. Lewis v. United States, 385 U.S. 206 (1966); United States v. Suarez, 380 F.2d 713 (2nd Cir. 1967). Moreover, such a rule would have the effect of establishing a different standard of credibility for the dope user-informant against the dope user-defendant. Neither is a paragon of civic virtue, but the value of their testimony is still to be weighed by the jury.

The test then for sufficiency upon appellate review is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be convinced to the degree of certitude by the evidence which it had a right

to believe and accept as true. Tobar v. State, 145 N.W.2d 782 (Wis. 1966). We do not perceive this to be the standard applied by the intermediate appellate courts in Illinois subsequent to the decision in People v. Bazemore, 182 N.E.2d 649 (Ill. 1962). In this context we believe that the testimony of but one witness, be it an informer, an accomplice or an undercover policeman, is sufficient to convict a defendant for the sale of narcotics if the testimony contains all of the essential elements of the crime. On Lee v. United States, supra; Bush v. United States, 375 F.2d 602 (D.C. Cir. 1967); Fields v. United States, 370 F.2d 836 (4th Cir. 1967); Fletcher v. United States, 158 F.2d 321 (D.C. Cir. 1946); Morrison v. United States, 365 F.2d 521 (D.C. Cir. 1966); Orebo v. United States, 293 F.2d 747 (9th Cir. 1961); United States v. Griffin, 382 F.2d 823 (6th Cir. 1967); United States v. Hernandez, 361 F.2d 446 (2d Cir. 1966); United States v. Masino, 275 F.2d 129 (2d Cir. 1960); United States v. Suarez, supra; Todd v. United States, supra; State v. Ballesteros, 413 P.2d 739 (Ariz. 1966); State v. Moraga, 403 P.2d 289 (Ariz. 1965); People v. Harris, supra; State v. Denney, 418 P.2d 468 (Wash. 1966); Tobar v. State, supra; State v. Sebastian, 171 So.2d 893 (Fla. 1965).

However, recognizing that the use of informers is a dirty tactic for a dirty business that may raise serious questions of credibility, we think the defendant is entitled to considerable latitude to probe credibility by cross-examination and to have the issue submitted to the jury with careful instructions cautioning them of the care which must be taken in weighing such testimony. On Lee v. United States, supra; Bush v. United States, supra; Fletcher v. United States, supra; Orebo v. United States, supra; Todd v. United States, supra; United States v. Griffin, supra; United States v. Masino, supra; State v. Denney, supra.

Special cautionary instructions are surely required when the informer's testimony is uncorroborated and no direct evidence is untainted or when there is only minor corroboration of the witness. Orebo v. United States, supra. And even when such testimony is corroborated in critical respects we would favor careful instructions in form and substance to call attention to the character of the testimony of the informer, leaving to the jury the ultimate question of value and credibility. Todd v. United States, supra.

We do not here suggest any particular formula of instruction for there is no ritual of words to be used and abstract instructions are usually beamed to the appellate courts rather than to the jury. Suffice it to say that the instruction should be beyond the scope of the ordinary instruction that the jury is the sole judge of the evidence and the weight to be accorded to the testimony of the witnesses. It is desirable that jury instructions have meaning in the particular circumstances of each case rather than be patterned for all cases, therefore, we leave it to the able trial counsel and trial courts to formulate appropriate instructions.

As in the publicity issue the trial court failed to give adequate guidance for the jury's consideration of the informer's testimony. We point out that this sometimes can be fatal to a conviction. United States v. Griffin, supra; Orebo v. United States, supra.

Our forewarning in *Pacheco,* supra, was clear; there can be no consideration of harmless error under the circumstances of this case. Accordingly, this case is reversed and remanded for a new trial.

THOMPSON, C. J., COLLINS, BATJER, and MOWBRAY, JJ., concur.