FRANCIS KENNETH GRAHAM, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 6110

April 17, 1970                    467 P.2d 1016

*Springer & Newton,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General; *Robert F. List,* District Attorney, and *Michael E. Fondi,* Deputy District Attorney, of Carson City, for Respondent.

---

## OPINION

By the Court, Mowbray, J.:

This is a cheating case involving a 25-cent slot machine. NRS 465.080.[1]

### 1. *The Facts.*

The crime took place on November 21, 1968, in the Carson City Nugget. The appellant-defendant, Francis Kenneth Graham, was spending the afternoon of that day gaming in the Nugget's casino. One of the lady patrons of the establishment, who was playing the slot machine "right next" to Graham, became intrigued by his consistent luck. As she testified, ". . . [H]e was right next to me, and then all of a sudden the quarters kept rolling out, and I didn't know why, but every time he went like this the money rolled out (indicating). I was fascinated and stood there and watched him. . . ." The lady witness observed the operation for about 15 minutes. We do not know from the record just what occurred when "he

---

[1]NRS 465.080 provides in relevant part:

"2. It shall be unlawful for any person, in playing or using any slot machine, lawful vending machine, coin box, telephone or other receptacle designed to receive or be operated by lawful coin of the United States of America in furtherance of or in connection with the sale, use or enjoyment of property or service:

". . . .

"(b) *To use or have on his person* any cheating or thieving device to facilitate removing from any slot machine, lawful vending machine, coin box, telephone or other receptacle any part of the contents thereof.

"3. Any violation of the provisions of this section shall be a gross misdemeanor." (Emphasis added.)

[Graham] went like this," other than the witness's answer to counsel's question:

"Q Well, could you be a little more descriptive of what he was doing, other than just this gesture that you made with your hands, this jabbing motion.

"A Well, I don't know. His back was to me. But every time his shoulder and his arm would go up the quarters would come out. . . ."

The lady reported Graham's activities to Mr. L. A. Steffans, a part-owner of the Nugget. He observed Graham "working on the machine," as he put it, and he then advised his son to telephone the police. Steffans testified that, while awaiting the arrival of the police, "I walked down towards Mr. Graham," and "As I got even with Mr. Graham on that row of slot machines, I could see that he had some tool and was working on the machine. At that point Mr. Graham saw me, and then he put the tool up under his coat." Graham started immediately to leave the Nugget. Steffans followed him to the door and asked him to remain, as Steffans wanted the police to "check him out." Graham's response was loud and definitely in the negative.

After Graham had departed, Steffans followed him down the sidewalk. The following seesaw pursuit took place: As Steffans would approach, Graham would stop and run toward Steffans, who would promptly retreat. Graham would then stop and turn around, and Steffans would resume the chase until he neared Graham; then the procedure would be repeated. Steffans was hopeful that the police would arrive momentarily, and he did not want to lose sight of Graham. As this Keystone-cop pursuit continued down one of the city's alleys, Steffans saw Graham remove, and throw under the staircase in back of the Old Globe Saloon, an object that later was found to be a "thickness gauge" or "spoon."[2]

Finally Graham reached his parked car. As Graham entered his vehicle, Steffans ran up, took out a pencil and pad, and endeavored to write down the license number of the car. This annoyed Graham, who leaped from the car and took after Steffans. Once again Steffans retreated successfully. Graham returned to the car, and as he was starting it, Steffans came up and jotted down the license number. Again Graham jumped from the car and went for Steffans, who was already running down the street. But this time Graham overtook him, knocked him down, broke his nose, and injured his vertebrae. At this juncture, the Carson City police arrived on the scene, pursued

---

[2]The device was recovered and received in evidence during the trial.

the fleeing Graham, and arrested him. He was charged with and found guilty by a jury of violating NRS 465.080, supra, a gross misdemeanor. The district judge sentenced Graham to serve 1 year in the county jail and pay a $1,000 fine.

2. *The Motion to Dismiss.*

Graham filed a motion to dismiss the information "on the ground that it fails to state a public offense, on the ground that two offenses are charged and on the ground that the information is not phrased in language which would reasonably apprise the defendant of the nature of the accusation against him . . . . The district judge denied the motion to dismiss. We agree with that ruling.

During oral argument, counsel was asked:

"Q  Is it your position that it [the information] didn't state a public offense or that it stated two?

"A  Both."

We find this position quite untenable. The essence of Graham's duplicity argument is that he is charged in one information with two crimes, the use *and* the possession of a cheating device. Certainly the elements of an offense charged must be set forth in the information with particularity, and each offense must be alleged in separate counts. NRS 465.-080(2), supra, provides in part that: "It shall be unlawful for any person, *in playing or using any slot machine,* . . . [t]o use or have on his person any cheating or thieving device . . . . (Emphasis added.) Graham was charged in the wording of the statute:

"[S]aid defendant did wilfully and unlawfully, while playing or using a quarter slot machine . . . , use or have on his person a cheating or thieving device to facilitate removing from said slot machine all or part of the contents thereof, all of which occurred at the Carson City Nugget located at 507 North Carson Street, Carson City, Nevada."

The recent opinion of this court in Laney v. State, 86 Nev. 173, 466 P.2d 666 (1970), is controlling in this case:

". . . Even though the legislature repealed NRS 173.320 as of January 1, 1968, we do not propose to abandon the common sense principal that a judgment will not be set aside or a new trial granted, in a criminal case, unless the accused is able to affirmatively demonstrate that the information is so insufficient that it results in a miscarriage of justice or actually prejudices him in respect to a substantial right. Langley v. State, 84 Nev. 295, 439 P.2d 986 (1968); Gallegos v. State, 84 Nev. 608, 446 P.2d 656 (1968)."

We fail to find any prejudice to the defendant in the instant case. Assuming, *arguendo,* that two public offenses are charged in the information, nevertheless Graham was tried, found guilty, and sentenced for a single offense. Since the penalty for use of *or* having on one's person a cheating device *while playing* a slot machine is the same, we find no prejudice to the defendant under the facts presented.

3. *The Evidence.*

Graham complains there is a lack of evidence to support the verdict. We need not restate it, as we have summarized it, supra. We conclude that there is substantial evidence in the record; therefore the verdict will not be set aside. " '[W]here there is competent evidence to support a verdict of the jury, the weight of the evidence and the credibility of the witnesses are within the exclusive province of the jury.' " Cross v. State, 85 Nev. 580, 582, 460 P.2d 151, 152 (1969), quoting Duran v. People, 427 P.2d 318, 321 (Colo. 1967).

Our standard on review has been announced in Crowe v. State, 84 Nev. 358, 366, 441 P.2d 90, 95 (1968):

"The test then for sufficiency upon appellate review is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be convinced to the degree of certitude by the evidence which it had a right to believe and accept as true."

The record supports the verdict. Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.