Argued February 19, affirmed April 1, petition for rehearing
denied April 27, petition for review denied July 14, 1971

# STATE OF OREGON, *Respondent*, *v.*
# FRED CHARLES TUCKER, *Appellant.*

483 P2d 825

*Edwin A. York*, Portland, argued the cause for appellant. With him on the brief was Charles Paulson, Portland.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

The defendant was indicted for the crime of murder in the first degree. He was convicted by a jury and appeals, asserting five assignments of error.

The first arises from the court's denial of defendant's motion for a mistrial made on the ground that after the jury had been impaneled two jurors purchased city newspapers containing accounts of the trial and brought them into the jury room. Immediately upon being so informed, the judge held an *in camera* hearing with each of the two jurors in the presence of counsel and the defendant. Both jurors testified that they purchased the newspapers to read

an article which contained the names, occupations and some general background biographical facts of each juror. Neither juror had read the newspapers purchased, and both stated that the papers were immediately rolled up and placed in a paper sack, and it was their intention to read the article only after the conclusion of the trial. Both also testified they had been informed by a third juror that the newspapers had an article about the jury. The third juror then testified that he had neither seen nor read the newspaper account and had only been informed of the article by his wife. Based on all the testimony the trial court found that there had been no prejudice and no improper receipt of information by the jurors. The motion for mistrial was denied.

In *State v. Elkins*, 248 Or 322, 432 P2d 794 (1967), the Oregon Supreme Court said:

"* * * There is no claim or showing that any juror was false in his answers to the court's inquiry at the time of defendant's first motion for a mistrial. The trial court and this court must presume that the answers of each juror were honest. *State v. McDonald*, 231 Or 24, 37, 361 P2d 1001 (1962). Based on these answers the trial court very properly denied defendant's first motion for mistrial." 248 Or at 326.

■ ■ Here, too, no claim is made that any juror testified falsely. The trial court has broad discretion in ruling upon motions for mistrial. *McDonald v. World Wide Dodge, Inc.*, 243 Or 218, 412 P2d 371 (1966). There was no abuse of discretion here. The motion was correctly denied.

Defendant's second assignment of error challenges the admission into evidence of facts indicating

the commission of other offenses by the defendant subsequent to the homicide.

The state proceeded on the theory that the deceased was murdered in the act of being robbed. During the trial the state asked a witness who was with the defendant both at the time of his arrest and at the time the murder weapon was purchased why he and the defendant bought the weapon.

"Q  Now how did you happen to buy a gun? What was it that you were buying a gun for?
"A  We needed some money.

"Q  And what did you need the money for? What purpose did you have? * * *
"A  Speed [amphetamines]."

Indeed the defendant himself testified that he was an habitual user of LSD.

The state also introduced testimony from different witnesses who, within two days or less subsequent to the homicide, had seen the defendant in possession of credit cards and checks bearing the name of the victim. The victim's wife testified that the signature appearing on a receipt from a credit card purchase effected by the defendant after the homicide was not her husband's signature. A handwriting expert testified that the signatures contained on the negotiated checks were that of the defendant. The state also showed that the defendant, while en route to California, endorsed and negotiated the victim's checks a day after the homicide, and that the victim's car was taken immediately after the homicide by the defendant and used by him to facilitate his escape to California. Other evidence showed that the victim's wallet, credit card and checks were in the defendant's possession

subsequent to the murder and were used by the defendant to obtain money and property used in connection with his flight, and that while in possession of the victim's credit cards two days after the homicide, defendant tried to use the same in Medford while en route to California and shortly thereafter was apprehended in California after the victim's car which he was driving broke down.

■■ These items of evidence constitute causal links in the totality of the homicide. Every act of the defendant, from the time of the purchase of the murder weapon, the murder itself, the appropriation of the victim's valuables and automobile and their possession and use by the defendant in his flight to California, were relevant to motive and intent and also were important links in the chain of evidence.

Evidence which demonstrates that the defendant committed other crimes may be admissible if it establishes motive for the crime charged. Indeed there are many grounds of admissibility. See, *State v. Hamilton,* 5 Or App 266, 483 P2d 90 (1971) ; *State v. Woolard,* 2 Or App 446, 467 P2d 652, Sup Ct *review denied* (1970) ; *State v. Moore,* 1 Or App 394, 460 P2d 866 (1969), 463 P2d 373, Sup Ct *review denied* (1970).

"* * * [T]he real question is not whether the collateral crimes occur before or after the crime charged. The question is whether the collateral crimes tend to show motive, design or purpose for the crime charged. For this purpose, retrospective evidence may be as pertinent as prospective." *State v. Long,* 195 Or 81, 116, 244 P2d 1033 (1952).

In *State v. Jensen,* 209 Or 239, 273, 296 P2d 618 (1956), the court said:

"* * * [T]he rule excluding such evidence

[evidence of other crimes] does not apply to evidence which is relevant to the issue. Here the defendant was in flight, and acts done by him in furtherance of his escape could be shown notwithstanding the conduct was criminal. * * *"

and in *State v. McIntire*, 2 Or App 429, 436, 468 P2d 536, Sup Ct *review denied* (1970), this court said:

"It is well established that evidence of flight or escape is admissible as evidence of guilty knowledge. * * *"

This assignment of error is without merit.

■ During the state's opening remarks, it contended that the victim's murder resulted from the defendant's desire to obtain money in order to buy narcotics. From our conclusion that the court did not err in admitting evidence of subsequent offenses, it follows that no error was committed and the defendant was not prejudiced by the state's remarks in its opening statement outlining the evidence it intended to offer concerning these offenses as charged in defendant's third assignment of error. This assignment is without merit.

The defendant contends in his fourth assignment of error that the court erred in admitting into evidence photographs of the deceased and other items of physical evidence taken both at the murder scene and at the county morgue, on the grounds their prejudicial effect outweighed their evidentiary value and that some of them were cumulative. All are conceded to be relevant and otherwise competent.

The court held a lengthy *in camera* hearing and carefully examined each exhibit. Not all of the exhibits were admitted by the court. Six were ex-

cluded as being cumulative; some others were withdrawn by the state.

■ ■ Whether an exhibit possesses sufficient probative value in relation to its possible prejudicial effect to warrant its admission is within the sound discretion of the court, as is the matter of cumulativeness.

In *State v. Freeman*, 232 Or 267, 274-75, 374 P2d 453 (1962), the Oregon Supreme Court said:

"We adhere to the rule that it is not error to receive relevant exhibits merely because they may have a traumatic effect upon the minds of jurors. Murder is never pleasant to contemplate. It is the jury's duty, however, to examine all the evidence and from such examination to declare a true verdict. The truth may be ugly. See *State v. Nunn*, 212 Or 546, 566-567, 321 P2d 356; *State of Oregon v. Long*, supra; *State v. Garver*, 190 Or 291, 226 P2d 771, 27 ALR2d 105."

We find no abuse of the court's discretion. The assignment is without merit.

Defendant's fifth assignment of error attacks certain introductory remarks made by the trial judge to the jury panel at the beginning of the trial.

The judge made the challenged statements before voir dire, after the first 12 jurors had been impaneled and while the other available veniremen were also in attendance in the courtroom.

The court explained the nature of the case to them, introduced the respective attorneys, read the indictment to the jury, told them that the defendant had entered a not guilty plea and had raised the defense of insanity, and briefly explained the burden of proof with respect to each and the presumption of innocence.

No contention is now made that any of the statements by the court were erroneous as to any matter of law contained therein.

The court's purpose in giving these preliminary instructions was to enable the prospective veniremen to better understand the questions about to be put to them by counsel on voir dire, to obviate the likelihood of a long series of repetitive questions by counsel, and to minimize the possibility of abuse by the oft-utilized tactic of counsel on voir dire of attempting to emphasize to the jury a particular rule of law deemed important to a party. Defendant objected to the court's remarks on the ground that the court's explanation excluded any mention of lesser included degrees of homicide, and also that they were improper. In an *in camera* hearing the trial court sustained the defendant's first objection and thereupon explained to the jury that a first degree murder charge also embraced certain lesser included degrees of homicide, concerning which they would be fully instructed at the proper time. Defendant's counsel then excepted additionally to the above further statement to the jury as improper.

> "In general, all matters which relate to the orderly conduct of a trial, or are necessary to the proper administration of justice in a court, and which are not regulated by precise statute or rule, are within the discretion of the presiding judge." 88 CJS 91, Trial § 36.

This is the rule in Oregon. *Thomas v. Foglio*, 231 Or 187, 371 P2d 693 (1962); *Cholia v. Kelty*, 155 Or 287, 63 P2d 895 (1937); *Phillips v. Creighton*, 211 Or 645, 316 P2d 302 (1957).

Defendant relies on ORS 17.210 in support of his contention that the court erred. It states:

> "When the jury has been selected and sworn, the

trial, *unless the court for good and sufficient reason otherwise directs,* shall proceed in the following order:

"* * * * *." (Emphasis supplied.)

It is obvious that the statute, by the italicized language, clearly vests in the trial judge discretion over the order or proceedings when exercised "for good and sufficient reason."

■ Inherent in this flexibility is the power to explain to prospective veniremen the nature of the case and its issues so that the trial can proceed fairly without wasting the time of court and counsel. Impartial introductory remarks of this nature, so long as they are not inaccurate statements of the law and the issues, may in some cases not only materially aid the jury but also assist the attorneys in their voir dire examination and speed the conduct of the trial. Examination of these preliminary remarks indicates that they were clearly of such a character. In this case the jury was fully instructed as to the law at the conclusion of the case. No error is assigned concerning them. Here the court was faced with a 10-day trial and a number of issues. We think the trial judge exercised his statutory discretion wisely.

Defendant also contends the procedure followed "was clearly error, and a denial of due process * * * guaranteed by the Fourteenth Amendment." Concerning criminal procedure, Crimes and Criminal Procedure Act, 18 USC § 3771, provides:

"The Supreme Court of the United States shall have the power to prescribe, from time to time, rules of pleading, practice, and procedure with respect to any or all proceedings prior to and including verdict * * *."

The Rules of Criminal Procedure, adopted pursuant to that authority, in Rule 24, 18 USC 3755, state:

"Trial Jurors

"(a) Examination. The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors *or may itself conduct the examination*. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper." (Emphasis supplied.)

■ The provision allowing the trial judge himself to conduct the voir dire examination of the jurors in criminal cases has been held constitutional. *Rodgers v. United States,* 402 F2d 830 (9th Cir 1968); *United States v. Duke,* 409 F2d 669 (4th Cir 1969), *cert denied* 397 US 1062 (1970). It is obvious, then, that the much lesser authority here exercised is not in violation of the Fourteenth Amendment. For the reasons stated, we find this assignment is without merit.

The judgment is affirmed.