WILLIAM BURNS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 6682

April 6, 1972                          495 P.2d 602

*Noel E. Manoukian,* of Zephyr Cove, for Appellant.

*Robert List,* Attorney General, Carson City; *Dennis E. Evans,* District Attorney, Churchill County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

William Burns picked the pocket of John Loter while the two were in a cabaret in Fallon, Nevada. Burns obtained approximately $120. He was charged with grand larceny, tried to a jury, and found guilty. Thereafter, in a separate hearing before the district judge, Burns was adjudged to be a habitual criminal because he had been convicted of two prior felonies.

NRS 207.010, subsection 1.[1] The district judge thereupon sentenced Burns to 25 years' imprisonment in the State Prison. Burns has appealed, challenging the validity of his conviction, as well as his sentence. We affirm the jury's verdict, but we reverse the habitual criminal adjudication and remand the case to the district judge for resentencing.

1.   Burns and Loter were patronizing the Club Horseshoe in Fallon, Nevada, on February 1, 1971, the date of the crime. While Loter was having a beer at the bar, Burns entered the room and, enroute to the bar, "brushed" against Loter. Loter finished his beer and left the club, but as he walked down the street he discovered that his wallet was missing. He immediately walked back into the club and announced his loss to the owner's wife, the owner, and the bartender. About that time, Burns emerged from the rest room and was accosted at once by Loter, who demanded, "Young man, if you have got my wallet I would like to have it back." Burns remained silent. The bartender telephoned the police, whereupon Burns fled the scene. The owner then went into the rest room and found Loter's empty wallet in a wastebasket. The club owner and an extra bartender chased Burns down the street. They were soon joined by Police Officer Alfred Mason in a squad car and were successful in overtaking Burns. Burns was placed under arrest and taken to the police station. Officer Mason, whose testimony was corroborated by Chief Donald Mills, testified at the trial that, as the police were booking Burns, ". . . [Burns] threw out to one side a wad of bills and he stated to me, 'This is the money that I stole off the old man at the club. Give the money back to him and give me a break.' or words to that effect." The wad contained four $20 and five $1 bills. Burns was then placed in the lockup room. Meanwhile, Loter had arrived at the station. He was shown the money and claimed that he had

---

[1]NRS 207.010, subsection 1, as in effect on May 11, 1971, the date of sentencing:

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of the situs of the crime or of this state would amount to a felony, or who shall previously have been three times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be adjudged to be an habitual criminal and shall be punished by imprisonment is the state prison for not less than 10 years." (Note: This subsection was amended effective July 1, 1971, by adding the phrase "nor more than 20 years". See ch. 123, § 1 [1971] Stats. Nev. 173.)

had more in his wallet. Burns was then taken to an interrogation room and, upon entering, said to Chief Mills, "Here. Here's the rest of it," holding forth another $20 bill. He was told to strip. He did so, and Loter's remaining $20 bill was found in his underwear. Burns then said, according to Officer Mason, "That's it."

2. Burns claims as one of his assignments of error that the statements he volunteered to the officers were improperly received in evidence because he was not given the Miranda warning.[2] Miranda v. Arizona, 384 U.S. 436 (1966). We do not agree. Volunteered statements are not barred by the Fifth Amendment, and they are not affected by Miranda. See Miranda, *supra,* at 478. The statements Burns made at the police station were not the result of any police interrogation. They were "voluntary and volunteered." State v. Billings, 84 Nev. 55, 59, 436 P.2d 212, 214 (1968).

3. Burns has challenged the sufficiency of the evidence. He claims it will not support the verdict. A reading of the record demonstrates otherwise. A jury's verdict may not be disturbed where substantial evidence is adduced to support it. Fairman v. State, 87 Nev. 627, 491 P.2d 1283 (1971), citing Collins v. State, 87 Nev. 436, 488 P.2d 544 (1971); Graham v. State, 86 Nev. 290, 467 P.2d 1016 (1970); McGuire v. State, 86 Nev. 262, 468 P.2d 12 (1970).

4. The district attorney, in cross-examining Burns, asked him the following questions:

"Q. Do you know why there would be any reason to lie on this witness stand?

"A. I ain't lying.

"Q. Do you know of any reason why you would?

"A. No.

"Q. Wouldn't be because it is very important that the jury believe you?

"MR. MACKEDON [attorney for defendant]: Objection. It is very argumentative.

"COURT: Sustained."

The district attorney's questions were argumentative, and

[2]Counsel for Burns did not object to the admissibility of Burns's statements during his trial.

the district judge properly sustained defense counsel's objections. Burns on appeal claims that the judge committed reversible error in failing to admonish the jury to disregard the colloquy between the district attorney and Burns. We disagree, inasmuch as Burns's only answer was a negative one.

We might say in passing that when prosecutors engage in this sort of examination they are treading on dangerous ground and therefore should refrain from such conduct.

Burns also claims that Instruction No. 7 resulted in unfair comment with respect to his testimony. Not so. Instruction No. 7 is the instruction given in almost every criminal case; it is directed to the weight the jury may give the testimony of all the witnesses, not any particular one.[3]

We conclude that the record on appeal fails to demonstrate any irregularities in the trial that would constitute a ground for reversing the jury's verdict. The guilty verdict must stand.

---

[3]Instruction No. 7:

"The jury are the sole and exclusive judges of the effect and value of evidence addressed to them and of the credibility of the witnesses who have testified in the case. The term 'witness' includes every person whose testimony under oath has been received as evidence, whether by examination here in court or through deposition.

"The character of the witnesses, as shown by the evidence, should be taken into consideration for the purpose of determining their credibility, that is whether or not they have spoken the truth. The jury may scrutinize the manner of witnesses while on the stand, and may consider their relation to the case, if any, and also their degree of intelligence. A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies; his interest in the case, if any, or his bias or prejudice, if any, for or against one or any of the parties; by the character for truth, honesty or integrity, or by contradictory evidence. A witness may be impeached also by evidence that at other times he has made statements inconsistent with his present testimony as to any matter material to the cause on trial; and a witness may be impeached also by proof that he has been convicted of a felony.

"A witness wilfully false in one material part of his or her testimony is to be distrusted in others. The jury may reject the whole of the testimony of a witness who has wilfully sworn falsely as to a material point. If you are convinced that a witness has stated what was untrue as to a material point, not as a result of mistake or inadvertence, but wilfully and with the design to deceive, then you may treat all of his or her testimony with distrust and suspicion, and reject all unless you shall be convinced that he or she has in other particulars sworn to the truth."

5. The 25-year sentence, however, may not stand. Preliminarily, as this court said in Hollander v. State, 82 Nev. 345, 353, 418 P.2d 802, 807 (1966): "The trial court must sentence on the substantive crime charged . . . , and then invoke the recidivist statute to determine the penalty." The State introduced in evidence exemplified copies of the two prior felony convictions. This court announced in Hamlet v. State, 85 Nev. 385, 387, 455 P.2d 915, 916 (1969), in following the mandate of the High Court in Burgett v. Texas, 389 U.S. 109 (1967), that there must be an affirmative showing that the defendant was represented by counsel or that he validly waived his right to counsel in the prior felony proceedings. If the record does not so show, that felony conviction may not be considered in determining whether the defendant is a habitual criminal. Neither of the prior felony convictions introduced in evidence met the test of Hamlet and Burgett.[4] We therefore must reverse the lower court's adjudication that Burns is a habitual criminal, and we remand the case for a resentencing solely on the grand larceny charge.

6. Since counsel for the appellant was appointed by the district judge to take this appeal, we direct that court to compensate counsel as provided by NRS 7.260.

ZENOFF, C. J., and BATJER, THOMPSON, and GUNDERSON, JJ., concur.

---

[4]Counsel for the State frankly and forthrightly conceded that the mandates of Hamlet and Burgett were not met in this case. He further admitted in oral argument that he did not know whether they could be satisfied by a further evidentiary hearing on remand.