JESS GOSS V. THE STATE.

No. 14936.   Delivered March 1, 1933.
Rehearing Denied April 26, 1933.
Reported in 59 S. W. (2d) 379.

The opinion states the case.

*Moore & Wilson,* of Amarillo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for manufacturing intoxicating liquor; punishment, one year in the penitentiary.

As we view the record, it would have been a matter of practical impossibility for the state to have made the election between transactions, demanded by appellant.  Two officers who raided testified that they found a large still with all of the accompanying paraphernalia, material, etc., but they saw no one at the still when they were there on November 22nd.  State witness Earl Thornton was an accomplice, and his testimony related to no particular transaction, except he stated that appellant put the still out on the Wylie ranch in June and kept it there until the raid, with the knowledge and consent of witness

who had charge of said ranch. He testified to no particular date or transaction. The state witness Hinson testified that he was out at the place some time near the date of the raid and saw appellant carrying water in and whisky out. He did not swear that he saw the still in operation at the time he saw appellant there, and the jury may also have concluded, under the instructions given by the court, that he was an accomplice. State witness Luther Thornton was the only other witness who swore to specific incriminating facts, and he said he remembered the occasion of the raid mentioned, and that he was at the place a few days before, and saw appellant who asked him if he would like to see the still, and showed it to him, but did not show him how it operated, nor tell him to whom it belonged. We find ourselves at an entire loss to know under facts like these how the court could have selected a given transaction and directed the jury's attention to this, or how the jury could have made an election between transactions.

No such penalty was given appellant as would indicate confusion, or possibility of conviction for more than one offense. No special charge was asked by appellant pointing out any particular transactions between which he desired that an election be made. As above stated, we regard it as extremely doubtful if either the court or the jury could have responded to the request for an election. We think no error appears in the refusal of the trial court to require an election.

The only other bill of exception complains of the fact that the jury used a dictionary in their retirement in order to know what the word "anterior" meant. The word appeared in the charge of the court. The reason why some understanding of said word was deemed necessary by the jury is set out fully in the record, but nothing suggests the use of dictionary for any other or further purpose, and it appears to us too great a stretch of the imagination without support in proof to cause us to believe that this was such misconduct of the jury as to call for a reversal of the judgment. We say this without intent to criticise the civil authorities cited by appellant.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In a canyon on the ranch belonging to U. L. Wylie, the officers found a copper still having a capacity of 500 gallons. It was equipped with supplies and appurtenances for operation and whisky was on hand. The

still was situated in Motley county. No one was present when the still was found.

Earl Thornton, a brother of Felix Thornton, testified for the state that he lived on the U. L. Wylie place and was there at the time the raid took place. He was under agreement with Wylie to take care of the stock and "ride the fence." The still was put on the place in June, 1928. The witness had seen the appellant around the still and had been told by appellant that he had made whisky. However, the witness did not see appellant make any whisky. Others besides the appellant were interested in the still. Thornton heard appellant say that the still belonged to Pinkney George and Walter Seals. Appellant said he was paid twenty cents a gallon for his labor in making the whisky. The witness had drunk whisky from the still but had nothing to do with it. He saw the appellant sitting outside reading a magazine on the day the still was raided. The still was in operation at the time.

Clint Hinson, a witness for the state, testified that he was under indictment in Collingsworth county, charged with bootlegging. He knew the appellant on November 22, 1928, the time of the raid. He was there about twelve or fifteen days before the raid was made. He had seen appellant doing various things in connection with making whisky.

Felix Thornton, a witness for the state, testified that he was a brother of Earl Thornton who had lived on the Wylie place during the fall of 1928. The witness had no occasion to go there except to visit his brother. He said there was a man by the name of Jess Goss, but the witness could not say that his name was Jess Goss; nor could he say that he was the appellant.

Luther Thornton, another brother of Earl Thornton, had visited him in the fall of 1928, when the latter lived on the U. L. Wylie place. The witness formed an acquaintance with the appellant in the fall of 1928 and saw him several times at his brother's place. He saw the appellant the last few days before the place was raided. He was loafing around the place. The witness had never seen the still until appellant showed it to him but did not show the witness how it was operated. The still was about 300 yards from the house of the witness' brother. Appellant was at Thornton's house every time the witness was there. He saw no one drinking when he visited his brother. He was offered a drink by the appellant, who did not say whether or not the liquor was whisky.

Appellant introduced two witnesses, Gilbreath and Bartee, to prove an alibi. From their testimony, particularly that of

Gilbreath, the appellant was working on Gilbreath's place, beginning in August and working until the 12th or 15th of December, 1928. Bartee testified that the appellant worked on Gilbreath's place and he saw him there in 1928. He did not recall the month. However it was later than September.

Appellant testified that he lived on Gilbreath's place near Paducah, Texas, during the month of November, 1928. He denied that he had lived upon the Wylie place from August to December. He also denied operating a still there.

Appellant contends in bill of exception No. 1 that the court should have required the state to elect as to the particular transaction upon which it would rely for a conviction. The court instructed the jury to disregard all of the counts in the indictment save the fifth count, which charges that on or about the 22nd day of November, 1928, "and anterior to the presentment of the indictment, in Motley county, Jess Goss did then and there unlawfully manufacture intoxicating liquor." There were six counts in the indictment, including the averment that the appellant unlawfully possessed equipment, still, mash, etc.; another that he possessed material and supplies for manufacturing intoxicating liquor; another that he possessed equipment for the manufacture of intoxicating liquor; another that he possessed a still for the manufacture of intoxicating liquor; and another that he possessed intoxicating liquor for the purpose of sale. There was no election made or called for until after the evidence was introduced.

After reviewing the record, the opinion is entertained that in refusing to compel the state to elect between the transactions, no harmful error was committed. The court, in its charge, specifically withdrew from the consideration of the jury all counts of the indictment except the fifth. Specific testimony that the appellant manufactured intoxicating liquor (which is the offense denounced in the fifth count) is not found in the record save that which comes from one witness, namely, Clint Hinson. The remainder of the criminative testimony is merely circumstantial and corroborative. Hinson's testimony, as stated above, is in substance that the appellant made whisky while Hinson was on the place and that his sojourn there was from twelve to fifteen days before the day of the raid. As understood, Hinson's testimony is as follows:

"I do not know that I was there ten or twelve days before the raid. I saw this defendant there at the still that day (referring to the day of the raid). He was just fooling around inside the building. He was making whisky. That is what I would call him doing. I saw him toting out whisky. I saw him

filling up barrels with water. I saw him tote it out of the building. I saw him go in the building where the still was. I went in."

The witness said further: "I suppose that during the year 1928, I went to the still six or seven times or more. * * * That still operated in this county something like ten months. I don't know when it was put in there and where it was when it was moved. I judge it had been at the place where the officers found it about four months."

Luther Thornton was the only one of the state's witnesses to the transaction, save the officers who made the raid, who was not an accomplice. He fixed the time of his visits to his brother at the Wylie ranch in the fall of 1928. Appellant was there at the time of the visit and showed the still to the witness. On cross-examination the witness said that appellant offered him a drink. He did not say it was whisky and the witness did not drink it.

As the record in the present case is understood, there is no testimony standing alone which would support the conviction of the appellant for the manufacture of intoxicating liquor, but the testimony of Hinson, with adequate corroboration, would support the conviction for that offense. As indicated above, the time of the offense to which Hinson's testimony points is apparently the time at which the raid took place. At all events, his testimony designates no specific date except that upon which the raid took place, which was twelve or fifteen days after Hinson went on the place. There was other testimony showing that the appellant was present on the day when the raid was made at night.

As written, we think the charge of the court fully guards the appellant against a conviction upon the uncorroborated testimony of an accomplice, and is so drawn as to make clear to the jury the legal restrictions upon the consideration of the accomplice testimony, making it plain that there can be no conviction without corroboration meeting the demands of the law, which are set out in the charge, and such corroboration will not be sufficient unless it comes from other sources than from one or more of the accomplice witnesses. That there was corroborative testimony other than that of the accomplices is made apparent from the reading of the statement of facts.

Bill No. 2 reflects the complaint of the appellant of the fact that one of the jurors was unacquainted with the meaning of the word "anterior," which is found in the indictment and in the charge of the court. In the fifth count of the indictment, it is averred that the alleged offense took place "anterior to the

presentment of this indictment." The same language is used in the charge of the court. That bringing a dictionary into the jury-room to ascertain the exact meaning of a word could be justly characterized as misconduct of the jury or made the basis for annulment of the verdict, we think is a matter which is entirely untenable. The disclosure by the investigation could not have been harmful. It is stated in Webster's New International Dictionary that "anterior" means "before in time; prior; antecedent."

The motion for rehearing is overruled.

*Overruled.*