Argued January 18, affirmed March 20, 1978

STATE OF OREGON, *Respondent,*
*v.*
ROBERT DAVID CUMMINGS, *Appellant.*
(No. CR 77-16, CA 7852)
576 P2d 36

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Johnson, Joseph, and Roberts, Judges.

JOHNSON, J.

## JOHNSON, J.

Defendant appeals his conviction following a jury trial for burglary in the second degree, disorderly conduct, carrying a dangerous weapon with intent to use, and unauthorized use of a vehicle. His principal assignments of error concern the court's failure to give one of his requested instructions and the court's denial of his motion for a mistrial.

■ Defendant requested that the jury be given an instruction on the crime of menacing on the grounds that it was a lesser included offense of carrying a dangerous weapon with intent to use. In *State v. Washington,* 273 Or 829, 835-36, 543 P2d 1058 (1975), the court held that a requested instruction on an offense must be given if the offense is necessarily included in the statutory definition of the crime charged or expressly included in a criminal offense as charged in the indictment, provided there is evidence which supports the instruction.

ORS 163.190 provides:

> "A person commits the crime of menacing if by word or conduct he intentionally attempts to place another person in fear of imminent serious physical injury."

In this case, menacing was not expressly included or charged in the indictment.[1] Thus the sole issue is whether the crime of menacing is necessarily included in the statutory definition of the crime of carrying a dangerous weapon with intent to use—that is, whether the crime of carrying a dangerous weapon with intent to use consists of every element of menacing plus some additional element or elements. We conclude that it does not.

---

[1] Count IV of the indictment alleged:

"And as part of the same act, transaction and criminal episode alleged in Counts I, II, and III, * * * the defendant knowingly and unlawfully carried and possessed a dangerous weapon, to-wit: one (1) .22 caliber Hi Standard revolver with the intent to use the same against certain law enforcement officers of the State of Oregon * * *."

■■ ORS 166.220 (1) defines the crime of carrying a dangerous weapon with intent to use as follows:

> "Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any loaded pistol, revolver or other firearm, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, billy, sandclub, sandbag, metal knuckles, nunchaku sticks, bomb or bombshell, or any other dangerous or deadly weapon or instrument, commits a Class C felony."

The material elements of the offense are: (1) attempting to use a dangerous weapon; or (1) carrying or possessing a dangerous weapon; (2) with the intent to use it against another. The actor who attempts to use a dangerous weapon, or who carries or possesses one with intent to use, does not have to intend to place another person in fear of injury. In contrast, the material elements of the offense of menacing are: (1) intentionally; (2) attempting; (3) by word or conduct; (4) to place another person in fear of imminent serious physical injury. Thus, inasmuch as the intent element of the crime of menacing is not *necessarily included* in the intent element of carrying a dangerous weapon with intent to use, menacing is not a lesser included offense and the court did not err in refusing to so instruct.

■ Defendant also assigns as error the court's denial of his motion for a mistrial on the ground that the bailiff permitted the jury to look up the definition of a word in a dictionary during their deliberations. The court, upon discovering its own copy of Webster's New Collegiate Dictionary in the jury room after the verdict had been delivered, and upon learning from the court clerk that the bailiff had provided the dictionary to the jury, on its own motion conducted a supplemental hearing at which both counsel were present to determine the circumstances under which the jury used the dictionary. The court took testimony from the court clerk, the bailiff, and the jury foreman.

Based upon this testimony, the court made findings that the dictionary was given to the jury in response to a specific request for a definition of the word "tumultuous" which appeared in the charge of disorderly conduct, and that the dictionary was used for the limited purpose of looking up the word "tumultuous." The court concluded that there was no error in the jury's use of the dictionary. There was substantial evidence to support the trial court's findings.[2]

Defendant argues that the jury's use of the dictionary was reversible error relying upon this court's decision in *State v. Holmes,* 17 Or App 464, 522 P2d 900 (1974). There, we held that it was reversible error for the court, over objection of both counsel, to send a dictionary to the jury room for use during their deliberations without making inquiry of the jury as to the purpose for which they desired to use it. We concluded that prejudice must be presumed from such circumstances.

The circumstances here are distinguishable from those in *Holmes.* Here, the testimony of the bailiff and the jury foreman indicated that the dictionary was used for the sole purpose of looking up the definition of the word "tumultuous," and the court so found. As defendant acknowledges, any error in the jury's reading of this definition was harmless inasmuch as the

---

[2]The foreman testified as follows:

"Q [The Court]: And how, physically, was that done? Was the dictionary handed around or did one person—

"A [Foreman]: No, one person read the definition aloud to the group.

"* * * * *

"A: * * * She read the definition of the word 'Tumultuous' * * *

"Q [The Court]: Were any other definitions looked up in the dictionary?

"A: Not to my knowledge, no. We put it aside and that was it. That was our only purpose in asking for it.

"* * * * *

"Q [The Court]: For example, terms such as 'reasonable doubt' and things of that nature were not looked up in the dictionary?

"A: No, they must have felt satisfied with their understanding of that."

court was of the opinion that it would have given the dictionary definition of the word "tumultuous" if requested to do so by the jury, and properly so since "tumultuous" is not a word of art. The trial court has broad discretion in ruling upon motions for mistrials. *State v. Tucker,* 5 Or App 283, 483 P2d 825 (1971). We conclude that the court did not abuse that discretion here.

Affirmed.