**John R. SAWYER, Appellant,**

v.

**STATE of Missouri, Respondent.**

**STATE of Missouri, Respondent,**

v.

**John R. SAWYER, Appellant.**

Nos. 56427, 58438.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 9, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 15, 1991.

Application to Transfer Denied
July 23, 1991.

David C. Hemingway, Marc B. Fried, Asst. Public Defenders, St. Louis, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, John R. Sawyer, appeals from his conviction of six counts of obtaining a schedule II controlled substance by deceit under RSMo § 195.170.1 (repealed 1989). The trial court sentenced appellant as a prior offender to a total of ten years imprisonment. We affirm.

The six incidents which comprise appellant's crime are identical. Appellant would make an appointment to see a local doctor about his hyperparathyroidism.[1] Appellant, who was 44 years old at the time of trial, had suffered from this condition for twenty-three years and testified that he was often in pain. He took the drug dilaudid, a schedule II controlled substance, to help alleviate the pain which was caused by his constant passing of kidney stones.

When appellant arrived at the doctors' offices, he would appear to be in a great deal of pain and would give the doctors his medical records, detailing his illness. Appellant would then inform the doctors that, since he was in the Merchant Marines and was soon to be heading for the Persian Gulf, he would need a large prescription of dilaudid. Appellant would also supply the doctors with various nonexistent Bridgeton, Missouri addresses.

The six doctors obliged appellant's request and between November 3, 1987, and November 18, 1987, appellant filled the doctors' prescriptions for a total of 1400 tablets of dilaudid. Appellant conceded at trial that his Merchant Marine story was a lie, that he did not tell any of the doctors about his prior prescriptions for dilaudid for fear that they would not prescribe additional dilaudid and he admitted that he defrauded or deceived the doctors into prescribing dilaudid for him. Appellant's defense to the charges was that the large quantity of dilaudid was a medical necessity for his condition. Appellant claimed that he took up to 200 tablets at a time to relieve his pain.

The jury did not believe appellant's defense and convicted him on all six counts. This appeal followed.

Appellant first claims that the trial court erred in refusing to grant a mistrial because of jury exposure to a newspaper article about the case. On the morning of January 20, 1989, the last day of trial, the St. Louis Post Dispatch printed an article about the appellant's trial. The article reported the method by which appellant obtained the dilaudid, which had already been admitted at trial. The story also indicated that the prosecutor in the case told the paper that appellant was arrested in Callaway County where he had "tried the same scam" and stated that appellant had previously "used the same scheme" to obtain 1100 tablets of dilaudid in Joplin and Springfield, Missouri before coming to St. Louis.

The court was immediately made aware of the article on the morning of January 20,

1. This condition results in the overproduction of the hormone responsible for regulating the body's intake of calcium, increasing the amount of calcium that the body absorbs. One of the results of the excess calcium is the potential creation of kidney stones.

1989, but decided to question the jury after their verdict in order to keep from attaching undue significance to the article. Immediately after the jury rendered its verdict, the court and both counsel asked each juror individually about the article.[2]

Through the inquiry, the court found that each juror was aware of the existence of the article. Two jurors and the alternate had actually read the article. The alternate juror did not read the article in its entirety, missing any mention of the Callaway County arrest and the reference to Joplin and Springfield. One of the other jurors remembered seeing the reference to Callaway County while the other did not. A fourth juror scanned the article and remembered noticing the Callaway County arrest. However, the juror believed that this reference was a typographical error and should have read "St. Louis County." All of the jurors and the alternate stated that the details or content of the article were not discussed during their deliberations. The most that could be learned from their individual testimony was that those who remembered reading or discussing the article believed that the article did not contain a conclusion as to appellant's guilt or innocence and that the article merely recited the facts as they had developed during the trial. All of the jurors stated that the article did not play any role in their verdict.

Appellant asserts that the juror's claims that the article did not influence their verdict is not sufficient to render the incident non-prejudicial, arguing, implicitly, that the mere fact that the article was read by a juror mandates a new trial.

■■■■ The trial court's obligation, when confronted with publicity, as occurred here, is to determine whether the publicity created a danger of substantial prejudice to the defendant. *State v. Stith*, 660 S.W.2d 419, 424 (Mo.App., S.D.1983); *U.S. v. Hood*, 593 F.2d 293, 296 (8th Cir.1979). If the court determines that the publicity does create such a hazard, the jurors should then be polled individually to determine whether they have been exposed to the publicity and, if they have, the court must determine the extent and the effect that this exposure had upon the jury. *Stith*, 660 S.W.2d at 424; *U.S. v. Burchinal*, 657 F.2d 985, 997 (8th Cir.1981). While there are many cases dealing with the possible prejudice that publicity has on a jury, each was decided on its own facts and we have found none which mandate a new trial solely because an article or broadcast has been heard by a juror(s). See *Stith*, 660 S.W.2d 419; *Hood*, 593 F.2d 293; *Burchinal*, 657 F.2d 985; *State v. Keeny*, 431 S.W.2d 95 (Mo.1968); *State v. Moore*, 499 S.W.2d 826 (Mo.App.; Spfld.D.1973).

In the present case, most of the article concerned evidence which was admitted at trial. Indeed, appellant admitted that he purposely lied to the doctors in order to obtain large quantities of dilaudid, which was precisely the major thrust of the article. The appellant's arrest in Callaway County was not in evidence. The article's reference to Joplin and Springfield re-creations of the same scheme were in evidence at trial. The extent of appellant's activities there, namely obtaining 1100 dilaudid tablets, was not in evidence.

The jurors were not questioned by either of the attorneys regarding their recollection of the article's reference to the 1100 dilaudid tablets. Thus, the court was presented with a newspaper article containing, in essence, a recount of the trial which also presented two revelations which were not part of the evidence; appellant's arrest and his receipt of 1100 tablets. None of the jurors stated that they had noted the reference to the 1100 dilaudid tablets and only one juror accurately recalled the reference to Callaway County.

On the other hand, the appellant admitted to committing the basic "scheme" outlined in the article, the jurors specifically noted that they did not discuss the content of the article in their deliberations and that the article played no part in their deliberations. The trial court is in a far better position than we are to determine the credibility of the jurors and to determine whether the intrusion of the article affected the

---

**2.** The alternate juror was questioned during the jury's deliberations.

outcome of the trial. See *Washburn v. Medical Care Group*, 803 S.W.2d 77, 83 (Mo.App., E.D.1990).

The Western District was recently confronted with a case of jury exposure to a newspaper article detailing facts not in evidence in *State v. Williams*, 797 S.W.2d 734 (Mo.App., W.D.1990). In *Williams*, the defendant raped and sodomized a woman in her home, stole $150.00 from her and, when the victim's mother interrupted his crime, he escaped from the home in his car. *Id.* at 736–37. On the morning of the second day of trial, a newspaper article about Mr. William's case appeared in the Kansas City Times which included a paragraph which told of Mr. Williams' arrest in Olathe, Kansas, two days after he committed the above crimes. This arrest was in evidence, however, the article went on to state that the car which he was driving when he was arrested (the same car which he used to escape from the present crime), had been stolen and that Mr. Williams possessed a wallet containing $185.00 which had also been stolen. *Id.* at 740.

Neither the car theft nor Mr. Williams' pilfering of a wallet containing $185.00 were in evidence at his trial. The trial court, after determining that four jurors were aware of the article, individually polled the jurors and determined that one of them recalled the article in detail, including the reference to the fact that the car was stolen. Another juror remembered that Mr. Williams was arrested in Olathe but could not recall either the reference to the stolen car or money. *Id.* at 740–41.

The court excused the first of the above jurors but refused to grant a mistrial. The Western District affirmed the court's action and the appellant, in our case, relies on the court's action in removing the juror in *Williams* to urge that we reverse appellant's convictions.

However, the *Williams* court affirmed the court's broad discretion in evaluating the impact that such articles have on the defendant's right to a fair trial. *Id.* at 741. We also point out that the newspaper article in *Williams* was much more prejudicial than the references contained in the article in the present case.

In *Williams*, the article revealed that the very automobile that the defendant used to escape from his present crimes had been stolen and the article mentioned Mr. Williams' possession of a stolen wallet containing cash, a similar crime to the $150.00 he stole from the victim at trial. The juror who was removed recalled the article in detail. *Id.*

In the case at bar, the article was not nearly as prejudicial since the appellant admitted to trying to deceive doctors into prescribing dilaudid. His defense was medical necessity and the information revealed by the article was not related to his defense. In fact, the article also revealed that appellant claimed he needed the drug in ever increasing quantities, since he had been taking the drug for twenty years.

The jurors in our case did not indicate that they were aware of the article's reference to the 1,100 tablets appellant obtained in Southwest Missouri. The trial court and the attorneys properly questioned each juror individually to determine what effect, if any, the article had upon their deliberations. Given the court's superior ability to assess the credibility of the jurors and given the nature of the newspaper article, we cannot say that the court erred in refusing to grant a mistrial.

■ Appellant's second claim on direct appeal is that the trial court erred in allowing the narcotics investigator for the State to testify regarding appellant's obtaining an undisclosed amount of dilaudid from Springfield and Joplin pharmacies. Appellant, on appeal, claims that this testimony constituted hearsay and also claims that it constituted evidence of uncharged crimes. However, appellant failed to object to any of the testimony he now assails. The portion of the investigator's testimony, in its entirety was as follows:

 Q Now, did your investigation end in St. Louis County with Mr. Sawyer?

 A No.

 Q Where else did it lead?

 A Springfield and Joplin, Missouri.

Q In the southwestern part of the state?

A Yes.

Q And did you conduct an investigation down in that part of the state?

A Yes.

Q Was your investigation similar to the one you conducted in St. Louis County?

A Yes, it was.

Q You went to the pharmacists' offices or stores?

A Yes.

Q You went to the doctors' offices?

A Yes.

Q And did you pull prescriptions at pharmacies and go back to the doctors' offices?

A Yes.

Q Similar to what you did in St. Louis County on the occasions we had just discussed earlier?

A Yes.

Q Did you also do the photo line-up with those doctors and pharmacists down in that area?

A Yes.

During the State's opening statement, appellant objected when reference was made to Springfield and Joplin, Missouri on the grounds that this would be evidence of uncharged crimes. The court partially sustained appellant's objection and cautioned the respondent not to refer to any arrests of appellant, but overruled appellant's objection regarding appellant's subsequent conduct in Springfield and Joplin. Respondent contended that these incidents showed that appellant was lying to the St. Louis doctors when he told them that he was leaving for the Persian Gulf.

During the investigator's testimony, the State elicited the method used by the investigator to get the doctors and pharmacists to identify the appellant. Appellant objected and was granted a continuing objection thereafter. However, appellant's objection was not based on the above testimony but went to the suggestive nature of the investigator's identification procedure. His objection to the identification procedure was overruled and has not been challenged on appeal.

The only portion of the quoted testimony which could possibly be called hearsay is the following colloquy:

Q Now, a very general question. Down in the Springfield, Missouri area concerning these photographs, you laid them out in the same fashion, the photographs, and Mr. Sawyer's photograph was picked out; is that what you are telling us?

A Yes.

Appellant's continuing objection, if applicable, only concerned the procedure used in the identifications, not whether any of the testimony was hearsay or evidence of uncharged crimes. Without an objection, appellant has failed to preserve his claim and the evidence may be considered by the jury. *State v. Lewis,* 735 S.W.2d 183, 188 (Mo. App., S.D.1987).

Moreover, the testimony itself only indicated that appellant was investigated in Springfield and Joplin. Respondent was attempting to lay a foundation with this testimony for the introduction of certain documents. These documents were not allowed into evidence. Point denied.

■ Having addressed appellant's points on direct appeal from his conviction, we now turn to appellant's sole point of error regarding his postconviction claim of ineffective assistance of counsel. Movant filed his *pro se* motion on January 2, 1990, which was amended, after an extension, on March 19, 1990. The motion court denied appellant relief without an evidentiary hearing on April 12, 1990, and appellant appeals.

Appellant's sole point is that his motion was sufficient to warrant a hearing on his claim that his counsel was ineffective in failing to present any medical testimony in support of appellant's claim that large amounts of dilaudid were necessary for his condition.

■ To be entitled to an evidentiary hearing, the movant must allege facts, not merely conclusions, which warrant relief. *Guyon v. State,* 776 S.W.2d 907, 908 (Mo. App., E.D.1989). Movant's motion failed to

allege that such medical testimony was even available, that movant's counsel was aware of such evidence and failed to state the content of such testimony. The motion court's denial of movant's motion without an evidentiary hearing was not clearly erroneous.

Appellant's convictions are affirmed.

CRIST and SIMON, JJ., concur.