**STATE of Missouri, Respondent,**

v.

**Thomas Vern DILLON, Appellant.**

No. WD 47111.

Missouri Court of Appeals,
Western District.

Nov. 2, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied
Feb. 22, 1994.

Before CRANE, P.J., and KAROHL and CRAHAN, JJ.

*ORDER*

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, C.J., and FENNER and ELLIS, JJ.

ELLIS, Judge.

Thomas Vern Dillon was charged by information with one count each[1] of first degree burglary (§ 569.160), second degree robbery (§ 569.030), forcible rape and attempted forcible rape (§ 566.030, RSMo Supp.1992), forcible sodomy and attempted forcible sodomy (§ 566.060, RSMo Supp.1992), kidnapping (§ 565.110), first degree tampering (§ 569.-080), unlawful use of a weapon (§ 571.030), and two counts of armed criminal action (§ 571.015). A Cass County jury found him guilty on all eleven charges. He was sentenced as a prior and persistent offender to two consecutive terms of life imprisonment and nine other consecutive sentences totaling 150 years imprisonment. We affirm.

Dillon raises three points on appeal. First he argues the trial court erred in submitting to the jury an instruction based on MAI–CR3d 310.50 (voluntary intoxication) because it had the effect of excusing the State from proving beyond a reasonable doubt his mental state for each of the offenses charged. In Point II, Dillon asserts the trial court erred in giving MAI–CR3d 302.04 (Burden of Proof) for the reason that it permits a finding of guilt based on a quantum of proof less than "beyond a reasonable doubt." And in Point III, he contends the trial court erred in overruling his request for a continuance to seek and obtain expert analysis and testimony regarding his mental state from use of intoxicants.

The facts are not in dispute. On November 1, 1991, Dillon went to the home of 80 year old Lois Weatherman in Latour, Cass County, Missouri. He knocked on the door, Weatherman opened it, and Dillon asked if she knew a Mr. Ethridge. After advising Dillon that Ethridge was deceased, Weatherman started to close the door, when Dillon shoved his way into the house, striking her on the head. He then raped Weatherman on the floor, and later forcibly sodomized her. Afterward, he attempted to rape and sodomize her again.

Not long thereafter, Dillon secured a butcher knife in the kitchen, which he held to Weatherman until she gave him $550 from her purse. Still armed with the butcher knife, and warning Weatherman that he would kill her if she failed to cooperate, he took her to her garage where they got in her car, which he then drove to Gunn City. He drank two beers on the way. Dillon eventually drove to a small house where he had been living to get more liquor and beer. He returned with a sack of beer and asked Weatherman where he could get some liquor. She suggested Harrisonville and Dillon started driving in that direction, but after a while, he stopped and began trying to undress Weatherman again, "messing" with her and pulling on her breasts. She asked him to leave her alone and he then hit her on the arm, but ultimately did resume driving.

---

1. All references are to RSMo 1986 unless indicated otherwise.

After acquiring more beer in Garden City, Dillon traveled south on Highway 2 in Cass County and was observed weaving by Trooper Jackson of the Missouri Highway Patrol. Jackson pursued, and found the vehicle in a ditch on the side of the road. Weatherman was still in the car. Jackson observed Dillon running in a field a short distance away, gave chase and apprehended him.

█ In his first point, Dillon argues that the trial court erred in submitting to the jury an instruction based on MAI–CR3d 310.50 because that instruction had the effect of excusing the State from proving beyond a reasonable doubt his mental state for each of the eleven counts charged, in violation of his right to due process of law. Dillon relies on *State v. Erwin*, 848 S.W.2d 476 (Mo. banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993), where the Missouri Supreme Court held that MAI–CR3d 310.50 deprives a defendant of due process under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), because it implicitly relieves the State of the burden of proving beyond a reasonable doubt that he possessed the requisite mental state for the crime charged. However, the Court in *Erwin* explicitly restricted the application of its holding:

> MAI–CR3d 310.50 should not have been given and is not to be given in any case in the future. This ruling shall be applicable only in cases tried in the future and cases now subject to direct appeal where the issue is preserved that MAI–CR3d 310.50 violated due process because it relieved the [S]tate of its burden of proof as to the requisite mental state. *Erwin*, 848 S.W.2d at 484.

Here, Dillon's trial counsel objected to the intoxication instruction patterned after MAI–CR3d 310.50 at the instruction conference and again in his motion for a new trial, but in neither case was it on the grounds specified in *Erwin*. In both instances, Dillon argued that MAI–CR3d 310.50 was a misstatement of the law on the use of voluntary intoxication as a defense to a criminal charge. This argument was expressly rejected in *Erwin*, 848 S.W.2d at 483. He is therefore not entitled to a new trial on the basis of the *Erwin* decision.

█ In oral argument, Dillon contended for the first time that even if we should find that his trial counsel failed to make the proper objection under *Erwin*, we should nonetheless reverse his convictions for plain error pursuant to Rule 30.20. He asserts that since *Erwin* prohibits future use of MAI–CR3d 310.50, the fact that it was given in his case constitutes plain error, and he invites us to so hold. We decline. We are bound by the Missouri constitution to apply the most recent controlling decision of the Supreme Court of Missouri. Mo. Const. art. V, § 2; *State v. Flenoid*, 838 S.W.2d 462, 470 (Mo. App.1992). Our Supreme Court has the inherent authority to determine whether a decision changing a rule of law is to be applied retrospectively or prospectively. *State v. Walker*, 616 S.W.2d 48, 48–49 (Mo. banc 1981). With full knowledge of the possibility that some defendants would be unable to take advantage of the holding in *Erwin*, the Court exercised that authority in carefully limiting its retrospective effect. Under such circumstances, our enforcement of that limitation is not tantamount to condoning a "manifest injustice or miscarriage of justice" as contemplated in Rule 30.20. Accordingly, Dillon's first point is denied.

Dillon's second point is what our Supreme Court recently described as a "well-worn" challenge to the trial court's giving of MAI–CR3d 302.04 over his objection. "This attack, misguidedly based on *Cage v. Louisiana*, [498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339] [ (1990) ], has been repeatedly denied by this Court and we find no reason to depart from our prior holdings." *State v. O'Brien*, 857 S.W.2d 212, 222 (Mo. banc 1993) (citations omitted). Dillon's second point is also denied.

█ In his third and final point, Dillon claims that the trial court abused its discretion in denying his pretrial motion for a continuance, thereby violating his constitutional rights to due process and to present evidence on his behalf. The trial was scheduled for September 15, 1992, and the motion was filed on September 10, 1992. The case had been pending for approximately ten

months, and Dillon had already been granted two continuances from prior trial settings. A ruling on a motion for a continuance rests within the sound discretion of the trial court and will not be reversed on appeal absent a very strong showing of abuse of that discretion. *State v. Schaal,* 806 S.W.2d 659, 666 (Mo. banc 1991), *cert. denied,* — U.S. —, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992). In a criminal case, an application for a continuance is made pursuant to Rule 24.09, which provides:

> An application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made orally.

Failure of the party requesting a continuance to comply with the various requirements imposed by this rule is, in itself, reason enough for a judge to deny the request. *State v. Fuller,* 837 S.W.2d 304, 306 (Mo.App.1992). In particular, an applicant's failure to submit a supporting affidavit setting forth the facts upon which his application and motion for a continuance are based is, standing alone, a sufficient violation of Rule 24.09 to warrant denial of that motion. *State v. Sweet,* 796 S.W.2d 607, 613 (Mo. banc 1990), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991); *State v. Kechrid,* 822 S.W.2d 552, 555 (Mo.App.1992). In the instant action, the record reveals that Dillon's motion for a continuance was not accompanied by the required affidavit. In light of this fact, and because the function of such affidavits is to permit the trial court to pass on the merits of the request, we cannot say that the trial court abused its discretion in overruling his motion. Dillon's third and final point is therefore denied and his convictions are affirmed.

All concur.