STATE of Missouri, Plaintiff/Respondent,

v.

Gerard VIVIANO, Defendant/Appellant.

Gerard VIVIANO, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 62886, 64824.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 30, 1994.

---

S. Paige Canfield, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Beal, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant appeals from his conviction by a jury of second degree robbery, § 569.030, RSMo 1986.[1] He was sentenced by the court as a prior, persistent and class X offender to a twelve year prison term. He also appeals the denial, after an evidentiary hearing, of his Rule 29.15 motion for post-conviction relief. We affirm.

The evidence reveals that on June 27, 1991, at approximately 7:20 p.m., Officer John Vogt of the St. Louis Police Department was on patrol with his partner in the Soulard neighborhood of St. Louis when they were dispatched to Ninth and Russell to

---

1. All statutory citations are RSMo 1986, unless otherwise noted.

investigate a report of robbery. As they arrived at the scene, Vogt observed defendant being held on the ground by another man. The robbery victim was also nearby. Vogt interviewed victim, who indicated that defendant had robbed her. Defendant was arrested and taken into custody.

At trial, victim testified that on the evening of the robbery she was walking north on Ninth Street near Russell when she noticed a white man with a beard and long hair (defendant) coming toward her on the sidewalk. Just after the man had passed, she "[f]elt my [gold] chain go and I was thrown to the ground." Victim grabbed defendant's legs in an attempt to impede his escape and started screaming. Defendant eventually escaped, but the incident attracted the attention of onlookers who came to victim's aid.

Rudolph Gabriel Brock, Jr. testified that he was walking south on Russell when he heard victim scream: "Stop him. Stop him." He looked up and saw defendant struggling to get away from a woman who had grabbed him around the leg. He saw defendant kick free of victim's grasp and flee. Brock pursued defendant and when defendant stopped his flight to confront him, Brock tackled and wrestled defendant to the ground. Brock then restrained defendant until the police arrived. Brock testified that he never lost sight of defendant during the short chase.

Nicole Johnson testified that she witnessed a man (defendant) knock down victim and immediately pursued him with a baseball bat. However, Brock had tackled and subdued defendant prior to Johnson reaching him. She noted that the person Brock had subdued (and the police had arrested) was the same person she had seen attack victim.

Victim testified that she had never lost sight of defendant after he had escaped her grasp. After defendant had been subdued, she approach him and demanded the return of her chain. Defendant complied, opening his hand and releasing the chain. Victim also demanded the return of the medallion which had been on the chain but defendant told her he did not have it. She returned the

next day to the robbery scene, and eventually found the medallion.

Defendant testified on his own behalf. He stated that he was in a Soulard bar after work on the evening of June 27, 1991. After he had been in the bar about forty-five minutes, he left to catch a bus home. He stated he remembered little of what happened after leaving the bar because he was "real high". He said that in addition to drinking at the bar, he had sniffed "tulio" (defendant's slang for synthetic reducer of toluene, apparently a glue thinner) immediately after leaving the bar. He remembered a man shouting at him, remembered being tackled, and remembered seeing a Johnson with a baseball bat.

In his principal point on appeal, defendant asserts the trial court abused its discretion "by overruling [his] motion for a new trial on the basis of juror misconduct ... in that the jury considered facts not in evidence where a member of the jury brought a definition of the word 'force' from a dictionary into the jury room during deliberations and the jury was thereby improperly influenced."

■ After the jury had returned its verdict, and had been discharged, defendant's counsel told the court that she had been informed by two jurors that a definition of the word "force" (photocopied from a dictionary) had been present in the jury chamber when the jury arrived for the second day of deliberations.[2] In the hearing on the motion for a new trial, two jurors testified that this allegation was correct. Juror Crump remembered seeing at least three copies of the definition (on which he thought the definition of force was circled) and stated that the definitions had been read by over half the jury. He also stated that the dictionary definition was "talked about" though he stated it had no influence on his deliberation. Juror Mancuza also testified that the definition had no effect on her verdict. She stated that she was sure that two jurors had looked at the definition. The affidavit of another juror (which is not included in the record on appeal) was also introduced into evidence by defendant.[3]

2. The jury had deliberated for a short time the prior evening.

3. The state's contention in this case is that the testimony of the jurors was incompetent to show

Section 547.020 provides (in part) that a trial court *may* grant a new trial "[w]hen the jury has received any evidence, papers or documents, not authorized by the court," § 547.020(1), "or has been guilty of any misconduct tending to prevent a fair and due consideration of the case[.]" § 547.-020(2). Thus, a new trial is not always required whenever a jury is exposed to materials not properly in evidence; rather a new trial is required *only if a defendant has been prejudiced. State v. Kelly*, 851 S.W.2d 693, 695 (Mo.App.E.D.1993). On appeal, we must decide whether the incident resulted in prejudice to the defendant such that, as a matter of law, the court abused its discretion in refusing to grant defendant's requested relief. *State v. Suschank*, 595 S.W.2d 295, 298 (Mo.App.1979).

*Suschank* is the only Missouri case directly confronting the use of a dictionary definition during jury deliberations. There, the jury was having trouble deciding the meaning of the word "reasonable" in "reasonable doubt".[4] The jury asked the bailiff to provide them with a dictionary during deliberations, and the bailiff did so without the knowledge of the court or counsel. After the presence of the dictionary was discovered, defendant made a motion for a mistrial which was overruled by the court after the jury had returned its verdict. After interviewing the jury, the court determined that the use of the dictionary had not impacted the jurors' conclusion and that it was clear that the verdict would have been unchanged in the dictionary's absence.

We affirmed the trial court's decision, holding that while it was improper for the jury to have access to a dictionary, such use was not *per se* prejudicial. *Id.* at 298. We noted that the verdict need not be set aside if the *harmlessness of the information* be shown, and then stated: "It is apparent ... that the jurors found no definition of 'reasonable'· in the dictionary which differed from their knowledge of the ordinary usage of the term and therefore the court's determination that the defendant was not prejudiced by the use of the dictionary was not an abuse of discretion." *Id.*

We note that there appears to be a distinction between a jury's use of dictionaries and more specialized references such as law books in determining whether a defendant is prejudiced by the use of outside reference materials. "A reference to such an outside source as a dictionary is not prejudicial per se and often constitutes harmless misconduct. [citing, *inter alia, Suschank* ].... [A] dictionary cannot be equated with a law book, a dictionary being designed for general consumption and law books for those with special training." *State v. Sinegal*, 393 So.2d 684, 687 (La.1981). "[T]he definition of words in our standard dictionaries is taken as a matter of common knowledge which the jury is supposed to possess." *State v. Asherman*, 193 Conn. 695, 478 A.2d 227, 252 (1984). An annotation at 35 A.L.R. 4th, 626, 645–51, cites many cases (arising under varied circumstances and under numerous standards for judging whether a defendant has been prejudiced) in which jury or juror use of a dictionary has been held to be harmless.[5]

misconduct in that jurors are not allowed to impeach their verdict. This rule, the state notes, is also interpreted as prohibiting a juror from testifying as to the *facts* of any misconduct. *State v. Kelly*, 851 S.W.2d 693, 695 (Mo.App.E.D. 1993). However, where, as here, the state does not object to the questioning or the affidavit of a juror, the trial court can properly consider such evidence. *State v. Suschank*, 595 S.W.2d 295, 298 (Mo.App.1979).

In the absence of juror testimony or affidavits, the trial court assesses the probability of jury prejudice by evaluating the nature of the non-evidentiary material exposed to the jury and all surrounding circumstances. *Kelly*, 851 S.W.2d at 696.

4. *Suschank* was decided prior to the promulgation of MAI–CR2d 2.20 (now MAI–CR3d 310.-50) defining "[p]roof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt."

5. Among the words jurors sought to define in these cases were: "motive" and "intent", *United States v. Duncan*, 598 F.2d 839 (4th Cir.1979), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); "insanity", *State v. Amorin*, 58 Haw. 623, 574 P.2d 895 (1978); "culpable", *State v. McNichols*, 188 Kan. 582, 363 P.2d 467 (1961); "assault" *State v. Duncan*, 3 Kan.App.2d 271, 593 P.2d 427 (1979); "wanton act" and "wanton indifference", *Cole v. Commonwealth*, 553 S.W.2d 468 (Ky.1977); "uttering", *State v.*

The real danger of a jury's dictionary use is that "jurors will use the dictionary to construct their own definitions of *legal terms* which do not accurately or fairly reflect applicable law." *United States v. Birges,* 723 F.2d 666, 671 (9th Cir.1984) (emphasis added). There is no such danger where the word defined is not a legal term, but is one taken as a matter of common knowledge which the jury is supposed to possess. *See State v. Cummings,* 33 Or.App. 265, 576 P.2d 36, 37 (1978). An examination of the relevant statutes, and the accompanying comments, make clear that the term "force" in the context of second-degree robbery is such a "common knowledge" term.

"A person commits the crime of robbery in the second degree when he forcibly steals property." § 569.030.1. "Forcibly steals" is defined in § 569.010, which provides (in relevant part):

(1) **"Forcibly steals"**, a person "forcibly steals", and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of *physical force upon another person* for the purpose of:

(a) Preventing or overcoming resistance to the taking of property or to the retention thereof immediately after the taking;

. . . .

The **Comments to the 1973 Proposed Code** following V.A.M.S. § 569.020 (1979), essentially states that "force" is a "common knowledge" term:

The definition of "forcibly steals" in § 569.010(1) is based on New York Penal Code § 160.00. The idea combines the concept of stealing with the element of force or threat of force used to accomplish the stealing. *It was felt that the term "physical force" could not be further defined in such a way as to further a jury's understanding and hence no definition is included.* Such physical force must be used to accomplish the theft in *one of the ways specified.*[6]

In *State v. Babb,* 680 S.W.2d 150 (Mo. 1984), our supreme court held that:

. . . where a motion for a new trial is made on account of communications to the jury during their deliberations, there is a rebuttable legal presumption that they were prejudicial to the moving party, that this presumption may in some cases be overcome by evidence, and that where competent evidence is offered it is the duty of the trial court to hear and consider it, and that when it does so, and decides a motion thereon, its decision is discretionary, and is reviewable . . . [on appeal] for abuse of discretion only.

*Id.* at 152. (Citations omitted).

Here, the trial court held a hearing on defendant's motion for a new trial as it related to juror misconduct. The evidence presented showed that photocopies of the definition of the word "force" were seen by a number of the jurors. The two jurors testifying stated that the definitions had no impact on their verdict, and their testimony did not reveal that the photocopied definition differed from their knowledge of the ordinary usage of the word. Thus, no *actual* prejudice was demonstrated.

---

*McLain,* 10 N.C.App. 146, 177 S.E.2d 742 (1970); "tumultuous", *State v. Cummings,* 33 Or.App. 265, 576 P.2d 36 (1978); "corporal", "assault" and "battery", *State v. Holt,* 79 S.D. 50, 107 N.W.2d 732 (1961), "anterior", *Goss v. State,* 123 Tex.Crim. 494, 59 S.W.2d 379 (App.1933); "care, custody, and control", *Wilson v. State,* 495 S.W.2d 927 (Tex.Crim.App.1973); "utter", *State v. Donald,* 90 Utah 533, 63 P.2d 246 (1936); "conspiracy", "conspirator", "concerted", "copyright", "infringement", "plagiarism" and "doubt", *United States v. Steele,* 785 F.2d 743 (9th Cir.1986); "response" and "consummate", *United States v. Kupau,* 781 F.2d 740 (9th Cir. 1986) *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 45 (1986); "organization" and "organize", *United States v. Griffith,* 756 F.2d 1244 (6th Cir.1985); "callous" and "wanton", *United States v. Cheyenne,* 855 F.2d 566 (8th Cir.1988); "rape", *Davenport v. State,* 426 So.2d 473 (Ala. Crim.App.1982); "premeditated", *Franks v. State,* 306 Ark. 75, 811 S.W.2d 301 (1991); "inference", *State v. Asherman,* 193 Conn. 695, 478 A.2d 227 (1984) *cert. denied* 470 U.S. 1050, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1984); "aggravate" and "assault", *Tate v. State,* 198 Ga.App. 276, 401 S.E.2d 549 (1991).

**6.** "The term 'force', as used in the definition of robbery, has no technical meaning peculiar to law and must be given its ordinary meaning." 77 C.J.S. Robbery § 18 (1994).

■ While the court did not have before it the precise definition to which the jury was exposed, it is hard to conceive of a definition of "force" which would mislead a jury under the facts here,[7] and the instructions given.[8] The strength of the state's case is relevant to the issue of prejudice even where the jury is exposed to materials which are not properly in evidence, *State v. Beasley,* 731 S.W.2d 255, 257 (Mo.App.1987), and the evidence of defendant's guilt of the crime charged here is exceedingly strong.[9] This strong evidence of guilt, coupled with the "common knowledge" nature of the term "force" in this context, renders the likelihood of prejudice infinitesimal. While we are unprepared to hold that a juror's use of a dictionary does not constitute extraneous matters, as did the court in *Asherman,* 478 A.2d at 252, we do not believe jury use of standard dictionaries poses the same risk of prejudice as a juror's exposure

to evidence of other crimes, *see, e.g., Beasley,* 731 S.W.2d at 256–57, or news articles and reports. *See, e.g., Sawyer v. State,* 810 S.W.2d 536 (Mo.App.1991). In those cases, we found the defendants had not been prejudiced by the extraneous material. We find, in totality, no abuse of discretion in the court's overruling defendant's motion for a new trial.

Defendant next contends the trial court abused its discretion in submitting MAI–CR3d 310.50 "in that [the instruction may not be submitted over the defendant's objection] even when evidence of drug use is presented if substantial impairment cannot be inferred from the evidence and if [defendant] did not use impairment as a defense ..."

■ The instruction, patterned after MAI–CR3d 310.50,[10] provided:

---

7. For circumstances in which a jury's use of a dictionary to define "force" was held to be reversible error, see *State v. Abell,* 383 N.W.2d 810 (N.D.1986).

8. The relevant jury instruction, patterned after MAI–CR 323.04, is set out below:

If you find and believe from the evidence beyond reasonable doubt:
First, that on June 24, 1991, in the City of St. Louis, State of Missouri, the defendant took a gold chain, which was property in the possession of Georgi Steudle, and
Second, that defendant did so for the purpose of using or disposing of it in such a way that made recovery by the owner unlikely, and
Third, that defendant in doing so used physical force on or against Georgi Steudle for the purpose of overcoming resistance to the keeping of the property immediately after the taking,
then you will find the defendant guilty of robbery in the second degree.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
If you do find the defendant guilty of robbery in the second degree, you will return a verdict finding him guilty of robbery in the second degree.

9. Defendant seems to have conceded in closing arguments that he had indeed taken victim's chain, but argued there was no evidence force was used in so doing (mischaracterizing the law on that subject in the process). However, the uncontradicted evidence shows that defendant used physical force in one of the ways specified by the statute (and in the jury instruction track-

ing the statute). Defendant pushed victim to the ground while grabbing her gold chain and then struggled to evade her grasp when she resisted his escape. This conduct was sufficient to establish that defendant used force during the theft of victim's property. As Judge McMillian, speaking for this court in *State v. Ax,* 546 S.W.2d 549 (Mo.App.1977), stated:

Undeniably, to constitute the offense of robbery, the force used must precede or be contemporaneous with the taking of the property. *So, too, it is indisputable that where one snatches a valuable article from another it is robbery when force is exercised in overcoming the resistance of the person robbed or in detaching the article taken when it is fastened to the clothing or person of the victim.* But where the article is merely snatched from the hands of another, the offense is stealing, not robbery. *Id.* at 549–50.

10. We note that in *State v. Erwin,* 848 S.W.2d 476 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993), our supreme court found that "[b]ecause MAI–CR3d 310.50 implicitly relieves the state of proving an element of an offense as established by the legislature, the instruction violates due process." *Erwin,* 848 S.W.2d at 484. However, the court specifically limited the effect of its holding in *Erwin* by further stating: "This ruling *shall* be applicable *only* in cases tried in the future and *cases now subject to direct appeal where the issue is preserved* that MAI–CR3d 310.50 violated due process because it relieved the state of its burden of proof as to the requisite mental state." *Id.* (emphasis added).

Defendant's case was tried prior to the *Erwin* holding. On appeal, he argues only that the

You are instructed that a drugged condition from drugs will not relieve a person of responsibility for his conduct.

We disagree with defendant's contention that the evidence did not support the use of MAI–CR3d 310.50. Paragraph 4 of the instruction's Notes on Use states the instruction may be given over defendant's objection:

> If there is no evidence of involuntary intoxication, and it may fairly be inferred from the evidence that the defendant was intoxicated or drugged to such an extent that his judgment and actions were substantially affected thereby, or that his capacity to know or appreciate the nature, quality, or wrongfulness of his conduct was significantly impaired by reason of intoxication.

In *State v. Robinson*, 825 S.W.2d 877 (Mo. App.1992), the Western District upheld the use of the instruction in a second degree robbery case where the evidence revealed defendant told a police officer he was an alcoholic, and remembered nothing about the robbery because he was in an alcohol-induced blackout. Similarly, defendant here testified that he had been drinking alcohol and sniffing "tulio" and remembered nothing about the robbery. He testified he was: "high on something. That is what I want to bring out, that I was doin' something, between the time I left the bar to the time I got on Russell, which had an effect on me remembering things." Because sufficient evidence supports an inference of impairment, the trial court did not abuse its discretion in submitting this instruction to the jury. *See State v. Hunn*, 821 S.W.2d 866, 873 (Mo.App.1991).

Defendant also asserts trial court error in submitting Instruction No. 4, patterned after MAI–CR3d 302.04. There is no merit to defendant's contention that this instruction improperly defines the term "proof beyond a reasonable doubt." The definition of reasonable doubt found in MAI–CR3d 302.04 is constitutionally sound. *State v. Ervin*, 835 S.W.2d 905, 924 (Mo. banc 1992).

Defendant's sole point relating to the denial of post-conviction relief asserts that the motion court erred in failing to respond to each of defendant's allegations in the findings of fact and conclusions of law. No error results from a trial court's failure to make findings and conclusions on claims unsupported by substantive evidence or claims not cognizable in a post-conviction proceeding. *Williams v. State*, 744 S.W.2d 814, 817 (Mo.App.1987). We do not need to remand for further findings and conclusions if the record allows this court to determine the correctness of the motion court's denial of relief. *State v. Prowell*, 834 S.W.2d 852, 858 (Mo.App.E.D.1992). The findings and conclusions here are sufficient for meaningful appellate review. Point denied.

Judgment affirmed.

CRIST and AHRENS, JJ., concur.

---

instruction was not supported by the evidence. We note that he did not raise, at trial or in his motion for a new trial, the argument that the instruction violated due process by relieving the state of its burden of proof as to the requisite mental state. Thus, that issue was not preserved for our review and the *Erwin* holding is not applicable. *State v. Ottwell*, 852 S.W.2d 370, 372 (Mo.App.E.D.1993); *see, also, State v. Dillon*, 869 S.W.2d 67, 69 (Mo.App.W.D.1993).