**STATE of Missouri, Respondent,**

v.

**Richard MAYFIELD, Appellant.**

**No. ED 87375.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 20, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 23, 2007.

Application for Transfer Denied
May 29, 2007.

Michelle M. Rivera, (Public Defender), St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Jefferson City, MO, for respondent.

KENNETH M. ROMINES, Judge.

### Introduction

Appellant Richard Mayfield ("Mayfield") appeals from the decision of the Circuit Court of the City of St. Louis, the Honorable Philip D. Heagney presiding, after a jury convicted him of four counts of Statutory Sodomy, in violation of Section 566.062 RSMo. (2000)[1], two Counts of First Degree Child Molestation, Section 566.067, two counts of Victim Tampering, Section 575.270, two counts of Furnishing Pornographic Material to Minors, Section 573.040, and two counts of Incest, Section 568.020. The court sentenced Mayfield to life in prison, plus seven years. We affirm.

■ Mayfield argues that the trial court abused its discretion in overruling his motion for a mistrial because six jurors were exposed to outside information and publicity during jury deliberations that created a "danger of substantial prejudice" to his defense. Specifically, Mayfield argues that two jurors were exposed to news reports that revealed details of his prior convictions involving similar charges, and that these jurors' knowledge of this information made it impossible to render a fair and impartial verdict. We disagree.

### Factual and Procedural Background

Our review of the record reveals that Mayfield was arrested and charged with the aforementioned crimes after he engaged in a series of illegal sexual acts with two minor children over a period of several years. The matter went to trial, and Mayfield was convicted of all charges. It is worth noting that Mayfield does not con-

---

1. All statutory references are to RSMo. (2000) unless otherwise indicated.

test the sufficiency of the evidence to convict him. Rather, his sole point on appeal is limited to events that occurred during the jury's deliberations.

Following the close of all the evidence, the jury was instructed and allowed to begin its deliberations on the afternoon of Thursday, 10 November 2005, at approximately 1:10 p.m. At approximately 10:00 p.m. that evening the jury informed the court that it had not reached a verdict, and requested to break for the evening and continue its deliberations the following Monday, as Friday was a state holiday (Veteran's Day). Thus, the jury retired for the weekend, and returned the morning of Monday, November 14. The court began the morning by asking the jurors if anyone had heard or read any information about the case over the long weekend. Six jurors raised their hands, and the court questioned them individually. The court determined that four of the jurors who had raised their hands had not been exposed to any new information concerning the case. However, the court determined that the other two jurors had been exposed to new information concerning the case. Specifically, Juror Windsor indicated that he had heard a television news story that Mayfield had previously been convicted and sentenced to three life sentences for assaults on two boys, ages ten and twelve. Juror Eirvin admitted that he had seen part of the same news story, and further admitted that he had spoken to his wife and daughter about the story. Moreover, Juror Eirvin learned that the media portrayed Mayfield as a "sexual predator," but he only knew that Mayfield had previously been tried, or was currently being tried, for similar charges elsewhere. However, both jurors told the court that they had not shared this information with any of the other jurors and that this information would not affect their own deliberations in any way.

Following this revelation, Mayfield immediately moved for a mistrial on the grounds that this information unfairly prejudiced the jury. However, the trial court denied Mayfield's request for a mistrial and permitted the jury to continue its deliberations. The jury resumed its deliberations that morning at approximately 9:52 a.m., and returned its verdict at approximately 3:20 p.m. that afternoon. Following the verdict, Mayfield's attorney filed the appropriate post-trial motions, which were denied, and this appeal followed.

### Standard of Review

Our review of a trial court's denial of a motion for a mistrial is whether the trial court abused its discretion. *State v. McGowan*, 184 S.W.3d 607, 610 (Mo.App. E.D.2006). We will find that a trial court abused its discretion only when the ruling is "clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration." *Id.*

### Discussion

We note initially that when a trial court determines that members of a jury have been "exposed to publicity which may be adverse to the defendant, the trial judge must make a determination as to whether the publicity creates a danger of substantial prejudice to the accused." *State v. Stith*, 660 S.W.2d 419, 424 (Mo. App. S.D.1983); Section 547.020. If the trial judge makes such a determination, the court should individually poll the jury members "to determine whether they have in fact been exposed to the prejudicial information." *Id.* If any jurors have been exposed to such information, the trial judge must then "ascertain the extent and

effect of the infection, and what measures, including the possible declaration of a mistrial, must be taken to protect the rights of the accused." *Id.* Although a trial court may order a new trial, a new trial is not automatically required if a jury is exposed to "material not properly in evidence." *State v. Kelly,* 851 S.W.2d 693, 695 (Mo. App. E.D.1993). A new trial is required only if the defendant has been prejudiced by the material. *Id.*

At issue in this case is whether the information to which jurors Windsor and Eirvin were exposed created a danger of substantial prejudice to Mayfield. Mayfield's defense counsel argued that because Mayfield did not testify in his own behalf, it was highly improper for jurors to be exposed to any information regarding his prior convictions and sentences. Although we agree that jurors Windsor and Eirvin should not have been exposed to the news stories in question, we cannot say that the trial court abused its discretion in denying Mayfield's motion for a mistrial because we believe that their exposure to this information was not sufficiently prejudicial to warrant reversal of the conviction.

We reach this conclusion because the trial judge conducted a thorough debriefing of jurors Windsor and Eirvin and concluded that they had not shared this information with the other jurors. Furthermore, they told the court that this information would not affect their own deliberations. In particular, we note that the trial court specifically stated on the record that jurors Windsor and Eirvin were "sincere and genuine in what they were saying."

We also rely on *Sawyer v. State,* 810 S.W.2d 536 (Mo.App. E.D.1991). In *Sawyer,* this court held that a St. Louis County trial court did not err in denying the defendant's motion for a mistrial even though several jurors had been exposed to a newspaper article that contained evidence not presented at trial. The defendant was charged with six counts of obtaining a schedule II controlled substance by deceit in St. Louis County, but the article stated that the prosecutor claimed the defendant had also been arrested in Callaway County for similar charges, and had used the scam on numerous other occasions. *Id.* at 537. The court questioned the jurors individually about the article after the jury rendered its verdict, in order to prevent the jury from "attaching undue significance to the article" during its deliberations. *Id.* at 537–38. The court found that although the entire jury was aware of the article, only two jurors and the alternate had actually read it. The others either had either glanced at it or only read small portions of it. *Id.* at 538. One juror remembered seeing the reference to Callaway County, but believed it was a typographical error. *Id.* The court ultimately held that the defendant failed to show sufficient prejudice from the article because, in part, "the jurors specifically noted that they did not discuss the content of the article in their deliberations and that the article played no part in their deliberations." *Id.* This Court also noted in *Sawyer* that "[t]he trial court is in a far better position . . . to determine the credibility of the jurors and to determine whether the intrusion of the article affected the outcome of the trial." *Id.* at 538–39.

In this case, as in *Sawyer* and all other similar cases, the trial court was in a far better position to determine the intrusive and prejudicial effect of the news stories in question. The trial court conducted a thorough inquiry of the affected jurors and concluded that they were credible in their assertion that they had not shared this information with the other jurors and that it would not affect their own deliberations. Additionally, we note the jury delibera-

tions in this case. Initial deliberations were from 1:10 p.m. until 10:00 p.m. on Thursday. Subsequent deliberations, after the court's prejudice hearing, were from 9:52 a.m. until 3:20 p.m. on Monday. This reflects calm and measured judgment, not prejudicial haste. Thus, based upon the record before us, we cannot say that the trial court abused its discretion in denying Mayfield's motion for a mistrial. Point denied.

The judgment of the trial court is AFFIRMED.

GLENN A. NORTON, P.J., and LAWRENCE E. MOONEY, J., concur.